ELLIS, Judge.
This is a damage suit brought by Mary P. Sonier, individually and on behalf of her three minor children, for the wrongful death of her husband, Clay Paul Sonier. The defendant is Louisiana Power & Light Company. Trial on the merits was held before a jury, which rendered a verdict in favor of defendant. Pursuant thereto, judgment was signed, dismissing plaintiff’s demands, as well as certain incidental demands, and plaintiff has appealed. Since no other appeals have been taken, the judgment is final as to the incidental demands, which need not be considered here.
In April, 1971, defendant was contacted by Kevin H. Azzouz, President of Warren Buildings, Inc., for electric service to a parcel of ground on which Warren proposed to construct two buildings. The parcel was irregular in shape, and fronted on *25 Project Road on the east. Warren was going to build one building at the rear of the property, and another, for its own operation, about 35 feet south of the northerly fence and fairly close to the front of the property.
On'April 5, 1971, William F. Diehl, defendant’s sales representative, contacted Mr. Azzouz to discuss the matter. Mr. Azzouz showed him a plat of the property and the approximate locations where service would be needed. Mr. Diehl proposed a location near the northerly property line, and parallel thereto, and advised Mr. Az-zouz that about five feet would be required. He was advised by Mr. Azzouz that this location would not interfere with Warren’s operations.
On April 20, 1971, the service line was installed, running from Project Road westerly along the northerly line of the property, the poles being located about two and one half feet south of the fence. The poles installed were 40 foot poles with 10 foot crossarms, and carried a four wire 13,800 volt system. The wire suspended from the southerly end of the crossarms and was located about seven feet south of the fence, and was 26.6 feet above the ground. None of the wires were insulated.
At the time of the accident, Warren was engaged in the construction of steel buildings. In connection therewith, it handled steel beams up to 40 feet in length, and steel sheets up to 35 feet in length. These materials were moved around the premises by fork lift trucks, which could extend as high as 171/2 feet, and by flat bed trucks with gin poles on the rear, extending some 30 to 38 feet above the ground.
On the day of the accident, some steel beams had been brought to the property and were being moved to a point along the fence, west of the slab for Warren’s new building, by means of the gin pole truck. Nelson Sonier, decedent’s brother, was operating the truck, and Clay Sonier was steadying the bundle of beams, which was hanging from the gin poles by a metal cable. The truck was being backed toward the fence when the cable came in contact with the southerly wire. Clay Sonier was killed by electrocution as a result..
This suit was brought against defendant alleging that it was negligent in failing to have insulated the line, in failing to have it higher above the ground, and in failing to have buried the line. In its answer, defendant denied its negligence, and alleged as a defense, the negligence, contributory negligence and assumption .of risk by Clay Sonier, and the negligence of the officers, stockholders, employees and agents of Warren Buildings, Inc.
Three expert witnesses testified, one for plaintiff and two for defendant. Robert Briggs, an electrical engineer and the head of his own firm of consulting engineers, testified for plaintiff. It was his opinion that the design of electrical distribution services, such as the one in this case, should be based on the power needs and operations to be conducted on the premises. He testified that the minimum height above the ground should be eight to ten feet higher than the maximum length of the material to be handled or equipment to be used. He gave as a further alternative using only a short high voltage service, and bringing only insulated, low voltage service lines into the vicinity of the operations.
He stated that the type of installation made in this case was unsafe because of the likelihood of contact between the equipment used at the site and uninsulated wires. He found the installation to be in violation of Sections 210, 211, and 214A of the National Electrical Safety Code.
Ben Zion Segall, who testified for the defendant, is a well qualified consulting engineer. He was of the opinion that the installation was proper under the Safety Code. He pointed out that the height of 26.6 feet above the ground was in excess of the minimum height of 15 feet recommended in the Code for installations of this type. He further pointed out that the Code does not require insulation on instal *26 lations of this type. He was of the opinion that Articles 210, 211, and 214A of the Code had not been violated. He pointed out that no installation can be made absolutely safe because of the difficulty of anticipating future operations of any business.
Dr. Robert Drake, a professor of Engineering at Tulane University, agreed with Mr. Segall’s conclusions.
The standards to be observed by power companies in the construction of service lines are set forth in the National Electric Safety Code in the following sections:
“202. Minimum Requirements.
“The rules state the minimum requirements for spacings, clearances, and strength of construction. More ample spacings and clearance or greater strength of construction may be provided if other requirements are not neglected in so doing.”
“210. Design and Construction.
“All electric supply and communication lines and equipment shall be of suitable design and construction for the service and conditions under which they are to be operated.”
“211. Installation and Maintenance.
“All electric supply and communication lines and equipment shall be installed and maintained so as to reduce hazards to life as far as practicable.”
“214. Isolation and Guarding.
“A. Current-carrying Parts.
“To promote safety to the general public and to employees not authorized to approach conductors and other current-carrying parts of electric supply lines, such parts shall be arranged so as to provide adequate clearance from the ground or other space generally accessible, or shall be provided with guards so as to isolate them effectively from accidental contact by such persons.”
Section 232A, Table 1, provides the minimum vertical clearance above the ground for lines similar to this one to be IS feet.
 Our courts have held that power companies are held to a standard of using the utmost care to reduce hazard to life as far as is practicable, and, when it can reasonably be anticipated that persons may come in contact with the wires, must take reasonable precautions to prevent injury. However, the power company is not required to guard against hazards which can not be reasonably anticipated. See Nessmith v. Central Louisiana Electric Company, 257 So.2d 744 (La.App. 3 Cir. 1972.)
It is not disputed that the installation made in this case exceeded the minimum requirements of the Safety Code. The question is whether or not the defendant should have anticipated that the gin pole truck would be operating in the vicinity of the power line.
Mr. Diehl testified that Mr. Azzouz told him that the line as located would not interfere with his operations, and that he approved the line after it was constructed. Mr. Azzouz testified that he had told his employees to stay at least 15 feet away from the power lines. In the light of that testimony, we think the jury could properly conclude that defendant need not have anticipated the accident which happened, and we find no manifest error in their conclusion that defendant was not negligent.
In this Court, plaintiff for the first time raises the question of the constitutionality of manner in which the jury was selected, particularly because of the alleged exclusion of women therefrom. Plaintiff can not now object to the manner in which the jury was constituted because of his failure to object in the court below. R.S. 13 :3052 provides:
“All objections to the manner of selecting or drawing the jury or to any defect or irregularity that can be pleaded against any array or venire must be *27 urged before entering on the trial of the case; otherwise, all such objections shall be considered as waived and shall not afterwards be urged or heard.”
In addition, we are precluded from consideration of questions of constitutionality raised for the first time on appeal. Summerell v. Phillips, 258 La. 587, 247 So. 2d 542 (1971).
The judgment appealed from is affirmed, at plaintiff’s cost.
Affirmed.