288 So.2d 364 (1974)
Mrs. Mary Daigle GROS
v.
LOUISIANA POWER AND LIGHT COMPANY.
No. 5954.
Court of Appeal of Louisiana, Fourth Circuit.
January 8, 1974.
Rehearing Denied February 6, 1974.
Writ Refused April 5, 1974.
Kierr, Gainsburg & Benjamin, Vincent J. Glorioso, Jr., New Orleans, for plaintiff-appellant.
Monroe & Lemann, Andrew P. Carter, Eugene G. Taggart and J. Wayne Anderson, New Orleans, for defendant-appellee.
Before BOUTALL and SCHOTT, JJ., and BAILES, J. Pro Tem.
PATRICK M. SCHOTT, Judge.
Plaintiff has appealed from a dismissal of her action for her husband's wrongful *365 death allegedly caused by the negligence of defendant in failing to exercise the high degree of care imposed upon it by law in the maintenance of its high-voltage electric lines across decedent's property.
Defendant denied allegations of negligence and alternatively alleged that decedent was contributorily negligent.
The case was tried to a jury which returned a verdict in favor of defendant by a ten to two vote.
Decedent was killed on September 22, 1970, on his business property at Crown Point, Louisiana, as a result of contact between a metal pump and pole which he was holding and the overhead electric lines of defendant.
After decedent had purchased the property early in 1970 he constructed facilities for the storage and servicing of amphibious aircraft, including their refueling. In this connection, he installed a gasoline storage tank on the side of the road and, thus, beneath defendant's electric lines. On the morning of his death, decedent apparently decided to remove water which had collected at the bottom of the tank as a result of condensation. To accomplish this, he connected a hollow pipe to a hand-type pump, which pipe was long enough to go from the fill spout on a stand pipe at the top of the tank to its bottom. Although there were no eyewitnesses to the casualty, the evidence established that, in the process of either inserting or removing the pump and pole, the handle of the pump must have made contact with the power line so that the electricity flowed from the line to the pump handle through the pipe and through decedent's body grounding out through the storage tank and resulting in his death by electrocution.
Above the tank the electric line was 18'8" from the ground level. The tank was 4'4" high and the stand pipe 4'2". The lowest or sag point on the electric line measured 18'2" from ground level and was some 38' away from the tank. The overall length of decedent's apparatus, consisting of the pipe and pump, was 11'6".
Plaintiff introduced into evidence the National Electric Safety Code of the U. S. Department of Commerce, the standards of which governed the installation and maintenance of defendant's facilities.
Plaintiff contends that the Code's requirements are only minimum; that more ample spacing and higher factors of safety may be required by circumstances; that the existence of businesses and residences along the distribution lines are a factor that affects the minimum standards; and that the minimum vertical clearance of the line across decedent's property, as testified to by plaintiff's expert, should be 20 feet. However, defendant's expert testified that a minimum vertical clearance of only 18 feet was all that was required by the Code.
The Code prescribes not only minimum standards regarding vertical clearances, but also general requirements, including one that all electric supply and communication lines and equipment be installed and maintained so as to reduce hazards to life as far as practicable, and another that to promote safety to the general public, currentcarrying parts of electric supply lines should be arranged to provide adequate clearance from the ground or other space generally accessible.
Plaintiff concedes that she could not present uncontroverted evidence of a violation of the minimum standards for vertical clearances as required by the National Electrical Safety Code and, therefore, could not rely upon a violation per se creating a prima facie case of negligence, but she relies on the principle of law that defendant had the duty of exercising not reasonable or ordinary care, but the utmost or very highest degree of care in the maintenance of such a dangerous instrumentality as electricity and under all the circumstances of this case which need not be summarized here failed to discharge its duty. She contends that the jury would *366 have returned a verdict in her favor except for the trial judge's erroneous instructions.
In her brief to this Court plaintiff urges that the judgment of the trial court be reversed and the case remanded for a new trial based only upon the following specifications of error:

"I.
The Court was in Error in Its Instructions to the Jury with Regard to the Standard of Care Applicable in This Case.

II.
The Court was in Error in Distinguishing the Court's General Instructions from Those Charges Specifically Requested by Plaintiff and in Prefacing Plaintiff's Requested Charges with the Admonition that Said Charges Had Been Requested by Plaintiff."
The following excerpts from the trial judge's instructions are quoted so as to provide a complete background for a discussion of the legal consequences flowing from them:
". . . . . I'm going to now charge you on the law and the instructions of the law. The case is being presented to you for your decision and verdict and you are the judges of the law and of the facts in such a case. I am forbidden to charge you or even to comment upon the facts so it is my duty to charge you on the law applicable to this case and it is the duty of the jurors to accept and apply the law as layed (sic.) down to you by me.

* * * * * *
"The foundation of the plaintiffs' case is the alleged negligence of the defendant Louisiana Power and Light Company. The general tort law of this State is found in Article 2315 of the Louisiana Civil Code, the pertinent portion of which reads as follows: `every act whatever of man that causes damage to another obligates him by whose fault it happened to repair it.' The fault as used in this article is synonomous with the word negligence and negligence is defined in the following fashion. Negligence in the popular sense is the lack of due diligence or care. Actionable negligence or negligence in the legal sense has been defined as a violation of the duty to use care. Negligence such as the law takes cognizance of in imposing liability depends upon the existence of various essential elements hereinafter discussed such as a duty owed by the person charged and an injury which follows the violation of that duty in such direct and natural sequence that the breach of duty can be said to be the proximate cause of the injury. The existence of negligence must depend in each case upon the particular circumstances which surround the cause at the time and place of the occurrence on which the controversy is based. Acts that might be considered prudent in one case may be deemed negligent in another. Accordingly, negligence has been defined as the failure to exercise the degree of care demanded by the circumstances or as the want of that care which the law prescribes under the particular circumstances existing at the time of the act or omission which is involved. Otherwise stated, negligence consists in the failure to exercise the care which an ordinarily prudent person would use under the circumstances in the discharge of the duty then resting upon him. More particularly actionable negligence is the failure of one under a duty to another to do what a reasonable and prudent person would ordinarily have done under the circumstances or doing what such a person would not have done which omission or commission is a proximate cause of injury to another. Negligence may be succintly (sic) stated to be failure to exercise reasonable care toward a person to whom the duty to exercise reasonable care is owed and encompasses *367 acts of omission as well as commission.
"To afford recovery on the part of the plaintiffs it is necessary that the negligence complained of be the proximate cause of the injury. I shall explain proximate cause later."
There followed a discussion of contributory negligence, proximate cause and damages whereupon the trial judge continued:

* * * * * *
"Now I'm going to interrupt my general charge to at this time give you some special charges requested by the parties and then I'll pick up the balance of my charge.
"Now I'm going to read to you the charge number 3 of the plaintiffs which was requested and this is as follows: `The operator of high voltage electric lines is required to use the very highest degree of care to reduce hazards to life as far as is practicable.' All right, plaintiffs' requested charge number 6: `It is in accord with reason and common sense that persons controlling so dangerous and subtle an agency as electricity should use a high degree of care. Either the wires must be insulated or at least placed beyond the danger of contact with human beings. While the law does not require the wires to be insulated everywhere, where there is reason to apprehend that persons may come in contact with them in the pursuit of their calling or where they may be reasonably be expected to go they should in some manner be protected. Requested charge number 7 of the plaintiffs: In determining whether the very highest duty of care imposed on the electric company has been complied with you may consider as evidence in this case the standards of the National Bureau of Standards of the United States Department of Commerce contained in the National Electrical Safety Code and whether the standards established in that code were complied with. Plaintiffs' requested charge number 8: In considering whether Louisiana Power and Light Company complied with the National Electrical Safety Code in the construction and maintenance of its lines, you must consider whether the power company complied with all the requirements of the code both general and specific."
Thereupon he continued with seven more charges requested by plaintiff prefixing each with the label, "Plaintiff's requested jury charge number . . . ." And then he delivered a number of charges requested by defendant, all prefaced by the statement, "Now requested charges by the defendant." And each prefixed by the label "Defendant's charge number . . . ." He then concluded:
". . . . Now, going back to my general instructions, there are only two possible verdicts you can render in this case and they are as follows: One, if the evidence convinces you that the death of Mr. Gros was caused solely by the negligence of Louisiana Power and Light Company and there was no contributory negligence on the part of Mr. Gros, you must render a verdict in favor of Mrs. Gros for herself and on behalf of her children. If the evidenceThis is number two. If the evidence convinces you that defendant, Louisiana Power and Light Company was free of all negligence or in the event you should find that the Louisiana Power and Light Company was negligent but Mr. Gros was contributorily negligent you must render a verdict in favor of the defendant, Louisiana Power and Light Company.
"Now, with these charges, gentlemen, the court submits the case to you for your verdict . . . ."
The law applicable to this case was most recently expounded upon by this Court in Boure v. New Orleans Public Service, Inc., 255 So.2d 776 (La.App. 4th Cir. 1971). There it was held that the *368 highest degree of care is placed upon those who utilize electric power lines in their business endeavors and that actionable negligence results from a lack of such care.
Before us are the questions, 1) whether the trial judge's instructions contained the foregoing legal principles, and 2) if so, was the format such that the jury was likely to have been misled or confused.
The following rule for evaluating jury charges is enunciated at 89 C.J.S. Trial § 430:
"Provided they are consistent with each other, all instructions given in a case should be read together as a whole, each in the light of the others, and this rule with respect to construction of instructions as a whole applies to special charges given at the request of either party. Accordingly, instructions are not subject to exception where, when construed as a whole, they properly state the law, and this is particularly true where the jury are told that all instructions are to be considered as a series or as a whole. Where, however, an instruction is complete in itself, it must stand or fall on its own language."
This approach was sanctioned by the Supreme Court in Housing Authority of New Orleans v. Gondolfo, 208 La. 1065, 24 So. 2d 78, where it was said that "The charge of the trial judge must be considered as a whole, and particular expressions contained therein construed with reference to the context:"
Directly pertinent to the problem in the instant case is the following from 89 C.J.S. Trial § 434, which expands upon the above quoted principle from § 430:
"In accordance with the general rules hereinbefore stated, instructions on the issue of negligence are, as a general rule, sufficient if, when considered together, they fully and fairly present the issue. These rules have been applied to instructions as to the duty or degree of care owed by defendant generally. . . .
"Instructions on the issue of negligence cannot be sustained, however, if when construed together, they are confusing or misleading, or omit an essential element."
Everything that the trial judge said in his general charge with reference to negligence is accurate and applicable to this case. His statements to the effect that negligence is a lack of due diligence or care and that actionable negligence is a violation of the duty to use care are modified by statements to the effect that the existence of negligence depends upon the circumstances surrounding the case and that the degree of care depends upon the particular circumstances in existence. His statement that negligence is the failure to exercise the care which a reasonably prudent person would exercise under the circumstances, standing alone would be incomplete since it was necessary for him to instruct the jury as to what is the degree of care required of defendant under circumstances where it is maintaining high voltage electric lines, and this is more than sufficiently covered in his delivery of the plaintiff's requested charges to the effect that the operator of such a system is charged with the highest degree of care. There is nothing inconsistent between those portions of the general charge defining negligence and those charges requested by the plaintiff which explains the degree of care required of defendant in this case. When the charges as a whole are considered each part does complement the other and together they contain all of the law which is applicable to the case as is required by LSA-C.C.P. Art. 1792. We therefore conclude that plaintiff's first specification of error to the effect that the trial judge failed to provide the jury with instructions as to the standard of care applicable in this case has no merit.
But plaintiff contends that the language in which the trial judge couched the plaintiff's requested charges, and hence the instructions *369 on the applicable standard of care, to wit, by his labeling those special requested charges as such in each case, had the effect of an admonition to the jury that those requested charges were not a part of the court's general charge, "inviting the inference that the jury should give less weight to what was requested by the plaintiff and that the charge requested by the plaintiff was not the law given to the jury by the court in its general charge."
This issue has never been presented to a Louisiana Appellate Court but has been dealt with in other jurisdictions. For instance, in King v. Sharpe, 96 Ga.App. 71, 99 S.E.2d 283, at 291 the following was said:
". . . . Special ground two alleges that for the judge in giving a request of charge to inform the jury that he is requested by the defendant to give the instructions embraced in the request is error. The courts uniformly hold the contrary. The courts have likewise held that the judge should not state to the jury that he is requested by either party to give certain principles in charge of them. (Citations omitted) In some cases the effect of such a statement could, to our minds, be prejudicial.
"We again disapprove of the practice and, were it not for the precedent set by the cases referred to, we might be constrained to hold the statement constituted reversible error. However, the hurtful effect of the statement was minimized by the further instructions that the traffic rules which were given in response to the request applied to both the plaintiff and the defendants."
In Gorham v. Farmington Motor Inn, Inc., 159 Conn. 576, 271 A.2d 94:
". . . . The defendant attacks the court's charge in two other respects. It first claims that the court should not have informed the jury as to which party requested certain portions of the charge. Although we do not approve of such a procedure, in the absence of anything incorrect at law the giving of requests in this manner is not in itself reversible error, unless the jury were misled; (citations omitted); nor does the fact that the court was mistaken occasionally as to which party requested a given charge require reversal. A charge is examined to see if it fairly presented the case to the jury in such a way that no injustice was done to the legal rights of the litigants; it is not examined in a manner which would search our technical flaws or inexact, inadvertent or contradictory statements."
At 88 C.J.S. Trial § 411c, the following appears:
"Instructions, when given, are those of the court, and the better practice is to make no distinction between that portion which originates with the court and that which originates with either counsel, as by characterizing an instruction as given at the request of a particular party, but to give all proper requested instructions as emanating from the court itself. However, such characterization of instructions as given at the request of one party or the other is not error, or at least not available error, but it has been held erroneous to preface a requested instruction with the words `defendant also claims.' An instruction that a party's request charged by the court should be taken in connection with what the court had already told the jury is not erroneous as leaving the impression that the request was unsound as prepared. It has been held that it is not error for the court in giving a requested instruction to state that the court has been requested to give it."
Also see Reetz v. Rigg, 367 Mich. 35, 116 N.W.2d 323, where it was said: "It is improper, then, to submit special questions or requested instructions as having emanated other than from the court."
We are inclined to join what appears to be the weight of authority to the *370 effect that it is not good practice for the trial judge to attach a label to charges requested by the parties and thereby distinguish them from his own charges. After all, if the requested charges do not contain applicable law they should not be given at all and if, on the other hand, they do contain applicable law they should be in the general charge in the first instance. All of the law should be accorded equal dignity provided it is applicable, and the jury may very well draw an inference that what is said to be requested by the parties does not have the same weight and importance as what the trial judge saw fit to include in his general charge.
However, we do not find that the trial judge committed reversible error. At the beginning of his instructions he announced his intention to charge the jury on the law, and while he did make the statement that he was interrupting his own general charge to give the special requested charges, he said nothing which would lead the jury to separate these requested charges from his own as being inapplicable or as being incorrect statements. On the contrary, they were necessarily included in his opening statement that all of what he was going to read constituted the law for them to follow. Furthermore, at the conclusion of the reading of all charges, both his own and those requested, he stated, "Now, with these charges, gentlemen, the court submits the case to you for your verdict," again indicating to the jury that all of what he had read was to be considered by them in their deliberations and all portions of the charges combined to make up the body of law applicable to the case. Thus, upon a thorough consideration of the instructions as a whole and the judge's reference to plaintiff's requests in the context of the entire body of instructions we find no merit to plaintiff's second specification of error.
Accordingly, the judgment appealed from is affirmed, plaintiff to pay all costs of this appeal.
Affirmed.