391 So.2d 1243 (1980)
Patricia Ann OLINDE, Widow of Claiborne Olinde, Jr., Individually and as Tutrix of the Minor Children, Clarissa J. Olinde and Clayton J. Olinde
v.
STATE of Louisiana et al.
No. 13553.
Court of Appeal of Louisiana, First Circuit.
October 6, 1980.
Rehearing Denied December 15, 1980.
*1244 Fred Belcher, Jr., Lee Herrington, Baton Rouge, for Patricia Ann Olinde, Ind., Etc.
Frank Gremillion, Richard Creed, Asst. City-Parish Atty., Baton Rouge, for City Parish of Baton Rouge.
Lawrence Durant, Baton Rouge, for State of Louisiana through its Department of Highways.
Kenneth Barnette, Baton Rouge, for Louisiana Elec. Co.
*1245 Before ELLIS, COLE and WATKINS, JJ.
COLE, Judge.
Plaintiff-appellant, Mrs. Patricia A. Olinde, individually and on behalf of her two minor children, filed suit against four defendants alleged to be responsible for the wrongful death of her husband, Claiborne Olinde, Jr. Mr. Olinde was electrocuted when he touched a metal sign that had come into contact with an underground electric cable. The trial court determined that there was no negligence on the part of the State of Louisiana, through the Department of Transportation and Development. The State had designed and implemented the lighting system which was served by the underground cable. The court also found there was no negligence on the part of Louisiana Electric Company, the contractor that was hired by the state and who actually installed the lighting system. The court found the other two defendants, the City of Baton Rouge and the Parish of East Baton Rouge, had breached their duty to exercise reasonable care in the installation of the traffic sign that had become electrically charged. The City-Parish was ordered to pay plaintiff $371,215.00 plus costs.
The plaintiff and the City-Parish have both appealed. The City-Parish contests the trial court's finding of liability and challenges the damages as being excessive. Plaintiff raises three issues to be considered on appeal. She asserts the trial court erred in finding no negligence on the part of the State of Louisiana, through the D.O.T.D. Plaintiff further argues the court erred in finding no negligence on the part of Louisiana Electric Company. Finally, plaintiff argues the trial court failed to award her adequate damages. She seeks to have the amount of damages raised to $685,976.20. Because we find the trial court was not clearly wrong nor did it commit manifest error as to any aspect of the case, we affirm. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The details of the case tell the story of a tragic and freakish accident. On August 4, 1975, Claiborne Olinde, Jr., twenty-six years old, was walking along the sidewalk next to College Drive near the I-10 interchange. He stopped momentarily near a metal post that supported a directional traffic sign. He either intentionally touched or accidentally hit the signpost. He held the post for a moment and then fell to the ground. Police officers arrived at the scene and attempted to revive him but he was pronounced dead upon arrival at Doctor's Memorial Hospital.
A post accident investigation revealed that Mr. Olinde had been electrocuted. The sign he touched had been energized with 480 volts of electricity. This unique situation had developed when city-parish workers had installed the traffic sign some eighteen days earlier. The evidence showed that the metal signpost had pierced an underground electric cable. Only one of the two wires in the cable was cut so that the current continued to flow. The cable was a part of the lighting system that had been designed by the state and installed by Louisiana Electric Company in 1969. The lighting system was controlled by a sensing device that energized the system only when it became dark. Therefore, at the time the sign was installed (during the daytime), the underground cable was not carrying any electric current. Consequently, the city-parish workers had no indication that the metal post of the sign had pierced the underground line. Experts at the trial hypothesized that both the damp ground and the metal post were receiving current from the underground line. Mr. Olinde's body served as a conductor for this current when he touched the sign.

NEGLIGENCE OF THE STATE, THROUGH D.O.T.D.
Evidence at trial established that the underground cable was buried eighteen inches deep. All witnesses knowledgeable in the field of electricity agreed the National Electric Code is the code applicable to the work done by the state. The 1965 code, which is the code in effect at the time the lighting system was designed, required a *1246 minimal depth of eighteen inches. (It is irrelevant that the code was later changed to require a depth of twenty-four inches).
Plaintiff argues the State was negligent in not burying the cable deeper than the depth required by the code. There was much discussion of this issue at trial. Plaintiff's two expert witnesses testified that in their professional opinion the code did not establish adequate standards. The defendants' two expert witnesses said they felt constructions built in accordance with the code were sufficiently safe. In cases where there is conflicting testimony of expert witnesses the appellate court must rely on the fact finder's impressions. This finding of fact will not be overturned unless manifest error appears in the record. St. Pierre v. Gabel, 351 So.2d 821 (La.App. 1st Cir. 1977). Therefore we accept the trial court's findings that defendants' experts established the eighteen inch minimum depth was sufficiently safe, according to the practice and requirements in effect at the time the system was designed.
Plaintiff urges the accident would not have occurred if the cable had been buried twenty-four inches. This is true and unquestionably establishes the actions of the State were a cause in fact of this unfortunate accident. However, the trial court found there was no liability because there was no breach of duty. The State acted reasonably in installing the cable according to the standards of the National Electric Code.
It is well established in Louisiana jurisprudence that mere compliance with a code such as the National Electric Code or the National Electric Safety Code does not per se relieve the defendant of being found negligent. McKowen v. Gulf States Utilities, 358 So.2d 675 (La.App. 1st Cir. 1975). A determination of negligence must be made in light of the circumstances of each case. Burley v. La. Power & Light Co., 319 So.2d 334 (La.1975) rehearing denied 1975. The trial court found several circumstances which justified the State's action of burying the cable the minimum eighteen inches. One important factor is that the State delivered copies of the "as-built" plans to the City. These plans are drawings that are made as the electrical system is actually being installed. The State was reasonable in assuming the City would refer to these drawings to locate the underground cable before digging. Another factor that justifies minimal burial is the State insulated the cable to a greater extent than was called for by the code. The evidence indicates the code called for a 45 mill insulation. The State used a 65 mill insulation plus a 30 mill outer jacket. The entire line was encased in a conduit for added protection. Although this heavy-duty insulation was obviously insufficient to protect the line from the sharp edge of the metal signpost, the record reflects this amount of insulation would have been more than adequate to protect against most foreseeable disturbances.
The foreseeability of a situation is yet another factor that is indicative of negligence, regardless of compliance with the code. The plaintiff argues the State should have anticipated the city-parish might be digging in this area. The trial court found the State anticipated if the city-parish workers planned to do any excavation in the area, they would first consult the as-built plans and then take whatever steps necessary to locate the underground wires.
The McKowen case is easily distinguishable from the present case because the danger that arose in McKowen was foreseeable. In McKowen, the mast of plaintiff's sailboat came into contact with an overhead electric wire, causing severe electrical shocks to the plaintiff. The court found the utility's compliance with the National Electric Safty Code (a code specifically applicable to utility companies) did not per se relieve them of negligence. The court examined the circumstances surrounding the accident. The evidence showed the land directly underneath the line in question had ordinarily been dry land and the clearance met the code requirement. However, on the day of the accident the water had risen so the land directly underneath the line was then covered with water. The clearance *1247 between the water and the line was therefore greatly reduced. Testimony at trial clearly established the high water was not an extremely unusual condition, the utility company was well aware of the frequently rising water, the utility company knew the area was heavily traveled by sailboats, and a very similar accident had occurred recently. These factors established the utility company should have anticipated the condition and was negligent for failing to take steps to prevent that type of accident.
To the contrary, the testimony in the Olinde trial indicated this strange phenomena of the sign becoming energized by the underground cable, had never occurred before or since the accident. Professionals from the City-Parish Department of Public Works and from the D.O.T.D. both testified as such. The trial court found that since the situation was not foreseeable, the State was justified in relying on the standards of the code.

NEGLIGENCE OF LOUISIANA ELECTRIC
Plaintiff urges that Louisiana Electric was negligent for installing the underground line at the eighteen inch depth. The trial court found no merit to this claim. Louisiana Electric, like any other person or legal entity, has a duty to use reasonable care. The record reveals Louisiana Electric acted reasonably in installing the line exactly as the plans dictated. The plans meet the specifications of the National Electric Code. The Code was designed to set forth guidelines, which if followed, would result in constructions free from hazard, although not necessarily efficient, convenient or adequate for good service or for future expansion. National Electric Code, § 90-1A (1965). Therefore, it was completely adequate and reasonable for them to comply with the plans as presented to them.

NEGLIGENCE OF CITY OF BATON ROUGE AND THE PARISH OF EAST BATON ROUGE
The trial court found the city acted negligently in installing the traffic sign without making any attempt to first locate the underground cable. The record reflects the city workers who actually installed the sign were well aware of the fact there was underground cable in the area. This could be readily observed by noticing there were no visible overhead wires running between the light standards. One worker, Mr. Lipscomb, testified they simply looked around the area and then dug the hole at a spot they felt was safe. He testified they assumed the line ran directly between the two light standards although the evidence indicated the line actually ran several feet in front of the light standards.
While it is understandable these workers would make such an assumption, the City must exercise more care in the installation of signs in areas where it is known underground cables exist. The record reflects the standard practice at the time of the accident was to give complete discretion to the workers who installed the sign. The risk of making contact with an underground cable is a serious one, therefore it is simply not reasonable to allow this much discretion to laborers who have no training in the area of electricity.
The record establishes the State sent a copy of the "as built" plans to the City-Parish. The City had these plans in its possession at the time the sign was installed, yet the plans were not consulted. There is conflicting testimony as to the accuracy of the as built plans, but all parties agree they are not exact. The City-Parish argues even if the plans had been consulted the line could not accurately have been located. Certainly it can not be contended if the City had consulted these plans this situation would definitely not have arisen. The relevant point is the City-Parish made no attempt whatsoever to locate the underground lines before digging.
It is well known in the electrical community that the as built plans are not exact. There was much conflicting testimony at trial as to how helpful the plans would have been. The evidence establishes a well trained person is able to determine the approximate *1248 location of the lines from these plans. Defendants' experts contend they were able to locate the cable by carefully studying the ground in the area. An engineer for the D.O.T.D. testified a person desiring the exact location of the lines can obtain this information from the district engineer of the Highway Department. Another witness testified if there is any uncertainty about the exact location of the lines the area should be hand excavated to pinpoint the location before proceeding with machinery. The record is abundant with evidence that there are several steps that can be taken in order to locate underground electric lines. But the City-Parish did not take any precaution at all. The workers were given no supervision in the matter and were simply allowed to "guess." Such a lack of care clearly falls below the standard of a reasonable person.

DAMAGES
The trial court is granted wide discretion in determining the amount of damages to be awarded. This finding will not be disturbed unless there is a finding the court has abused its discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976), rehearing denied 1977. We find the award of $231,543.00 in favor of Patricia Ann Olinde is adequate. Plaintiff contends the award for pain and suffering of Claiborne Olinde, Jr. should be raised from $6,000 to $15,000. The record does not support this claim. There is no testimony to establish the extent of Mr. Olinde's suffering. It is certainly impossible to state he suffered nothing or he suffered a great deal. Expert medical testimony suggested he was killed almost instantly. The testimony indicates he was probably not conscious after coming into contact with the sign. In light of these circumstances it is reasonable to award the $6,000.
Plaintiff further contends the funeral expense award of $3,278 is inadequate. She offered into evidence a funeral bill totaling $9,039.20 and stated this amount was necessary to have the type funeral she wanted. Mr. Robert Williams, director of Gilbert's Funeral Home, testified at the trial. He stated this was an unusually expensive funeral, costing at least three times as much as the average funeral at the same funeral home. It is certainly up to Mrs. Olinde to spend whatever amount she deems appropriate on her husband's funeral, but the defendant can not be expected to bear the cost of such an extravagant affair. Mr. Williams specifically testified the average funeral cost from $2,000 to $3,000 so the award granted is adequate.
Plaintiff contests the amount of damages awarded for the loss of love and affection for herself and her children. There has been no abuse of discretion by the trial court. The awards for the children are reasonable. Plaintiff cites Cheatham v. City of New Orleans, 378 So.2d 369 (La. 1979), rehearing denied 1980, and claims because the ages of the parties involved are similar, the trial court should have granted similar amounts to the Olindes. The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion. Miller v. Thomas, 246 So.2d 16 (La.1971). Considering the significant amount of testimony concerning the stormy relationship between the plaintiff and her late husband, it can not reasonably be argued the trial court abused its discretion in granting $50,000 to Mrs. Olinde. The record reflects there were frequent physical separations, fights serious enough to require police intervention, a filing of a suit for separation, and a request for a restraining order. This evidence simply does not paint the picture of the "close-knit" family plaintiff claims the family to have been. The City-Parish argues the amount of damages is excessive. Again, the trial judge has great discretion. Although there may be valid arguments that the award should be less, the record simply does not indicate the judge abused this discretion. The City-Parish cites Case v. Arrow Trucking Co., 372 So.2d 670 (La.App. 1st Cir. 1979) for the proposition $30,000 is the highest possible award allowable for a minor child. This is a misinterpretation of *1249 the case. In Case, the court found the trial judge had abused his discretion in awarding an excessively high amount. Under the rule of Coco v. Winston Industries, supra, the appellate court is then required to survey similar cases to find the highest award allowed. At the time Case v. Arrow was written $30,000 was the maximum amount granted. But this procedure has no application at all to cases where there has been no abuse of discretion. Without the abuse of discretion, the amount of damages may stand.
For the foregoing reasons the judgment of the trial court is affirmed. All costs are to be assessed to the City-Parish.
AFFIRMED.