**E. B. SESSUMS and Sharon Sessums, Etc., Plaintiffs-Appellants,**

v.

**LOUISIANA POWER & LIGHT COMPANY, et al., Defendants-Appellees.**

No. 80–3423.

United States Court of Appeals, Fifth Circuit.

Unit A

Aug. 6, 1981.

Rehearing Denied Sept. 21, 1981.

---

Carl J. Schumacher, Jr., C. David Schumacher, New Orleans, La., for plaintiffs-appellants.

Eugene G. Taggart, New Orleans, La., for Louisiana Power & Light.

Before CHARLES CLARK and GEE, Circuit Judges, and SPEARS *, District Judge.

GEE, Circuit Judge:

Plaintiffs, Mr. and Mrs. E. B. Sessums, filed this Louisiana diversity case to recover damages for the death by electrocution of their nineteen-year-old son Steven. Several months before his fatal accident, Steven Sessums had helped his fiance's family, the Dunhams, erect above their home a citizen's band antenna (the commercially produced antenna was extended to a total length of about 45 feet by attachment to the end of an iron pipe and aluminum mast). Care was taken at the time of installation to insure that the antenna was kept clear of overhead power lines running across the back of the Dunham property approximately 22 feet above ground. Later in helping to dismount this same antenna, young Sessums was killed when it touched the power line in being lowered. Originally named as defendants in this wrongful death action were Louisiana Power & Light (the utility company), Tandy Corporation (the manufacturer of the CB antenna), and Nelson Dunham, on whose property the accident occurred.

Settlement was reached before trial between plaintiffs and defendant Dunham and his insurer. A summary judgment was granted Tandy; plaintiffs' interlocutory appeal from that summary judgment was denied; and Tandy is now out of the case. Plaintiffs' case against the power company went to trial before a jury, where they asserted that Louisiana Power & Light was liable on theories of negligence and of strict liability under article 2317 of the Civil Code.[1] The trial judge rejected plaintiffs' proffered jury charges on strict liability,

* District Judge of the Western District of Texas, sitting by designation.

1. Article 2317 reads: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications." The "modifications" are to be found in the several sections of the code immediately following article 2317; none is here applicable.

with assumption of the risk as the sole defense to the article 2317 action. The case was submitted on the negligence theory alone to the jury, which failed to find the utility company negligent in any regard. The trial judge entered judgment for defendant on that verdict, and plaintiffs timely filed this appeal.

Plaintiffs' sole complaint on appeal is that the district judge erred in refusing to submit to the jury their requested issue on article 2317 strict liability. Our only task, then, is to determine whether the current state of Louisiana law on the liability of power companies for accidents on or about power lines required the submission of a strict liability issue. For the reasons assigned below, we find that the trial court did not err in its rejection of that theory of recovery.

Until recently, it was clear that in Louisiana a utility bore responsibility in such circumstances only for the results of its negligence. *See Sonier v. Louisiana Power & Light Co.*, 293 So.2d 24 (La.App.1974); *Gros v. Louisiana Power & Light Co.*, 288 So.2d 364 (La.App.1974). The duty imposed on electric utilities was a heavy one, however, that of exercising the utmost care to avoid accident or injury. While more burdensome than the general negligence standard, a breach of that duty of utmost care still required a showing of fault, a showing not necessary for imposition of strict liability. The cases providing the clear answer that a utility's only possible liability lies in negligence, while quite recent, antedate the recognition in Louisiana of a strict liability action under article 2317. Their continued validity is thus not without doubt; our consideration of the development and current state of strict liability law in Louisiana, however, convinces us that their message remains essentially intact.

In 1975, with its decision in *Loescher v. Parr*, 324 So.2d 441 (La.1975), the Louisiana Supreme Court first recognized a claim for strict liability in tort based on article 2317 of the Code. It there laid out the requisites for recovery: successfully to assert this cause of action, plaintiff had to prove "(a) that the thing . . . which caused the damage was in the care (custody) of the defendant owner, (b) the defect or vice [of the thing], and (c) that his damage occurred through this defect or vice." *Id.* at 449. The "vice" is that which poses an "unreasonable risk of injury to another." *Id.* at 446–47. Once these elements are proven by plaintiff, defendant can escape liability only by showing that the injury was caused by the fault of the victim;[2] fault of a third person; or irresistible force. The possible applicability of these defenses to the facts of this case was not explored at trial, since the threshold question of strict liability was not submitted to the jury.[3]

As the doctrine is enunciated in *Loescher*, there are several elements of proof for the successful assertion of strict liability. A key inquiry, which defeats plaintiffs here, is that for an injury-producing "defect" or "vice" in the object. Plaintiffs are unable to point out any *defect* in defendant's "thing" (be it the power line or the electrical current itself) that posed an unreasonable risk of harm. The height of the wires (22 feet above ground); their location (parallel to and four feet within the back boundary of the Dunham property); that they were uninsulated; that no warning was posted that they were energized—these are all common and, in some instances, unavoidable practices in the industry (admittedly no certain ground for denial of strict liability) and have not been found, in Louisiana or elsewhere, to constitute *unreasonable* danger.[4] Plaintiffs are certainly cor-

2. Fault in this context being solely assumption of the risk. *See Rodrigue v. Dixilyn Corp.*, 620 F.2d 537 (5th Cir. 1980).

3. The decedent's behavior, in light of his apparent awareness of the danger of working around power lines as evidenced by his participation in the earlier, cautious effort to raise the antenna, might have presented a close question on assumption of the risk, had such an inquiry been necessary.

4. With particular reference to the alleged failure to warn of the energized state of these wires, *see Cates v. Beauregard Electric Cooperative, Inc.*, 328 So.2d 367, 370 (La.1976): "Elec-

rect in saying that electricity itself is dangerous; but the *unreasonable* character of that danger is not apparent and has not been demonstrated.

The question of defect or vice under article 2317 is not without ambiguities that prevent a cursory rejection of plaintiffs' arguments. In *Marquez v. City Stores*, 371 So.2d 810 (La.1979), the Louisiana Supreme Court affirmed a judgment for plaintiff in an article 2317 action in the face of the failure of anyone, court or party, to point to a specific defect or vice in the damaging instrument. A small child's foot was wedged between a step and the sidewall of a department store escalator, causing him serious injury. *Marquez* can be read to allow the presumption of defect from the fact of injury itself. "The fact that this escalator caught the child's shoe is an unusual occurrence in itself which would not have happened had the escalator not been defective." *Id.* at 813. "If this escalator were safe for small children with small feet, then James' shoe could not have been caught in this opening." *Id.* at 814.

Plaintiffs adopt a similar approach before this court: "The very fact that the decedent was electrocuted in this manner evidences the unreasonably dangerous quality of these things within LP&L's custody." But *Marquez* is distinguishable. Clearly, a correctly designed, manufactured, and operated escalator does not catch the feet of small children. It would not be unreasonable for Louisiana law, if it did so in *Marquez*, to accept and apply a theory akin to res ipsa loquitur, familiar as a negligence principle, in a strict liability context. *But for* a defect, whatever it might have been, *Marquez* may hold, there could have been no crippling injury. If this be a principle of Louisiana law, it is inapplicable here. Electrocution resulting from laying a metal object across a live wire is not an "unusual occurrence," *see Marquez*, 371 So.2d at 813; it will happen every time. There was no defect in the electricity; it behaved exactly as it must, seeking ground through the nearest conductive object.

Plaintiffs made no legally cognizable claim of any specific defect or vice in the electric current or the wire. Accepting their arguments requires accepting the notion that electricity itself, or perhaps the provision of electricity to residential areas through overhead lines, is unreasonably dangerous. Such a holding would make utilities the insurers against harm of those who come into contact with structurally sound power lines in normal operation. The law of Louisiana does not now require this approach; and whether public policy would be better served by acceptance of plaintiffs' position is not here our proper inquiry.

Despite the decision in *Loescher v. Parr, supra*, the current Louisiana authority indicates that power company liability in Louisiana must rest on a showing of negligence. In *Simon v. Southwest Louisiana Electric Membership Corp.*, 390 So.2d 1265 (La.1980), a more recent case with somewhat similar facts to this (victim's electrocution following contact of metal piping with overhead power line), the Louisiana Supreme Court reiterated that the duty owed by a utility was one of utmost care and that liability was based in negligence. "We agree with the court of appeal that operators of power lines are not required to anticipate every possible accident which may occur and are not the insurers of safety of persons moving around power lines in the course of everyday living." *Id.* at 1268. There was, admittedly, no direct discussion of article 2317 as an alternate basis of liability in *Simon.* That plaintiff did not assert such a theory would not prevent a Louisiana appellate court from considering its applicability for the first time on appeal. *See, e. g., Jones v. City of Baton Rouge*, 388 So.2d 737 (La. 1980).[5] That strict liability was considered and rejected as a possible ground of recov-

tric wires on a pole are an announcement of danger to almost anyone smart enough and old enough to get himself in contact with a wire 28 feet above the ground."

5. In *Jones* plaintiffs sued on the negligence theory under art. 2315 of the Code. Both the court of appeal, in reversing the trial court judgment for defendant and awarding plaintiffs damages, and the Supreme Court, in affirming

ery by the court can be inferred from the dissent's resort to that theory as the proper response to the facts of that case. 390 So.2d at 1269–70.[6]

In its assertion that imposition of article 2317 liability on electric utilities is an accepted doctrine of Louisiana law, plaintiffs point to two recent court of appeal cases dealing with electrocution injury or death. One of these, *Kent v. Gulf States Utilities Co.,* 398 So.2d 560 (La.App.1980), writ granted, 399 So.2d 585, was decided before the supreme court's *Simon* opinion. The second, *Hebert v. Gulf States Utilities Co.,* 395 So.2d 832 (La.App.1981), followed the supreme court pronouncement. Neither of the cases *holds* what plaintiffs would have us hold: that electric utilities are strictly liable for contacts with power lines and that it is error to fail to submit that ground of liability to the jury for its consideration. In both *Kent* and *Hebert* the state trial judges did include an article 2317 charge to the juries; the court of appeal decisions do not endorse or accept that charge as mandatory or even as correct. Rather, the opinions take the instructions and consequent verdicts as given and then proceed to find that plaintiffs' "fault" would bar recovery for defendants' negligence or strict liability.

Plaintiffs' requested instructions are not statements of current Louisiana tort law. Litigants whose success depends on securing substantive innovations in state law must address their arguments for them to state courts; such departures are not for us. *Rhynes v. Branick Manufacturing Corp.,* 629 F.2d 409 (5th Cir.1980). For the reasons discussed above, we find the trial court's rejection of the strict liability jury instruction correct. The judgment below is

AFFIRMED.

that disposition, relied on art. 2317 as the basis for liability.

6. In urging that strict liability was the proper measure for defendant's conduct, the dissent in *Simon* itself made clear that "Slemco's [the utility's] 'hot' line did not, in and of itself, pose an unreasonable risk of injury." 390 So.2d at 1270. That is basically plaintiffs' position here, however, that Louisiana Power & Light's "hot" power line was itself unreasonably dangerous.