Billie J. MARTIN

v.

**LOUISIANA POWER & LIGHT COMPANY, et al.**

Civ. A. No. 79–988.

United States District Court, E. D. Louisiana.

Sept. 7, 1982.

certain utility pole located across the street from the lounge. He managed to climb the pole, and upon reaching the top, came into contact with an electrical line carrying approximately 8,000 volts, sustaining a severe electrical shock. As a result of this accident, plaintiff lost his right arm slightly below the elbow and his right leg slightly below the knee.

Martin brought suit against Louisiana Power and Light Company, the owner of the utility pole; Bobby and Roberta Loftin, the owners of the Sassy B. Lounge; and Bob Rivero, the man who dared him to climb the pole, on a theory of strict liability under Article 2317 of the Louisiana Civil Code and on a theory of negligence under Article 2315 of the Civil Code. The Loftins were subsequently dismissed from the action and service was never effected on Mr. Rivero. Thus, the only remaining defendant is Louisiana Power and Light Company (LP&L) who now moves for summary judgment, contending that plaintiff was guilty of contributory negligence and his conduct bars his recovery as a matter of law.

For purposes of this motion, counsel have stipulated that on the night in question, plaintiff was intoxicated; plaintiff was an alcoholic; plaintiff climbed the utility pole and came in contact with an overhead energized wire owned by LP&L and that the first step on the utility pole [1] was 6′4½″ from the ground.

After considering the record, the stipulations, the briefs and arguments of counsel, and the law applicable to this case, motion of defendant LP&L for summary judgment dismissing plaintiff's claim is granted for the following reasons, to wit:

In the recent case of *Kent v. Gulf States Utilities Co.*, 418 So.2d 493 (1982), the Louisiana Supreme Court held that utility companies are not to be held to a standard of strict liability. Rather, the standard is one of negligence. *Id.* at pg. 498. *See also, Sessums v. Louisiana Power and Light Co.*, 652 F.2d 579 (5th Cir. 1981).

Adolph J. Levy, New Orleans, La., for plaintiff.

George Riess, New Orleans, La., for defendant.

WICKER, District Judge.

On or about March 17, 1978, plaintiff, Billie J. Martin had been drinking alcohol for a substantial period of time at the Sassy B. Lounge. After becoming intoxicated, he entered into a bet that he could climb a

---

[1]. They were installed in order that the Bell repairmen could have access to the telephone cable which was approximately 18′6″ from the ground. The live wire plaintiff came in contact with was about ten feet above the telephone cable, approximately 29′3″ from the ground.

■ Contributory negligence is determined by an objective standard. The test is whether or not the plaintiff was exercising ordinary care at the time of the accident. *See, Soileau v. South Central Bell Tel. Co.*, 406 So.2d 182, 184 (La.1981). In other words, it is a question of whether plaintiff was acting reasonably under the circumstances. *Dorry v. Lafleur*, 399 So.2d 559, 560 n.1 (La.1981) (Fedoroff, J.; ad hoc). This objective standard is applicable to plaintiffs regardless of whether they are careless or inattentive,[2] intoxicated,[3] or even insane.[4]

■ Plaintiff's argument that he was not guilty of contributory negligence because he lacked "volition" due to his alcoholism is not the law of this jurisdiction. Plaintiff cites no Louisiana cases that support the proposition that an alcoholic is not responsible for his own negligent conduct while intoxicated.[5] Plaintiff submitted a report and affidavit by a psychiatrist that plaintiff is an alcoholic, suffering from organic brain disease. Although I agree that alcoholism is a bona fide disease, *see, Martin v. New York Life Ins. Co.*, 621 F.2d 159, 160 (5th Cir. 1980), I do not agree that plaintiff is being penalized for his *status* as an alcoholic; rather, the focus here is on his *conduct.* Thus, even accepting plaintiff's mental debilities as a fact, I apply the "reasonable man" test and find plaintiff to be guilty of contributory negligence as a matter of law.[6]

■ Plaintiff contends that defendant was negligent in failing to raise the steps on its utility pole to a height that would make the energized wires inaccessible to the public.[7] This contention is based on the argument that within the scope of defendant's duty is the risk that intoxicated and other mentally deficient persons would attempt to climb the poles and come in contact with the energized wires, therefore, any contributory negligence on his part is no bar to recovery. Yet, duty/risk analysis, as applied in *Dixie Drive-it-Yourself System, supra,* and its progeny, is a two-step process: First, it must be determined whether the defendant's conduct was a cause in fact of the harm suffered by the plaintiff. The touchstone for determining cause in fact is whether the defendant's conduct was a substantial factor in bringing about the accident and resulting harm. Only if defendant's conduct is determined to be a cause in fact of the accident can the

2. *See, Soileau, supra; Bacile v. Parish of Jefferson*, 411 So.2d 1088 (La.App. 4th Cir. 1982); *Dixie Drive-it-Yourself System v. American Beverage Co.*, 242 La. 471, 137 So.2d 298 (1962).

3. *See, Thrasher v. Leggett*, 373 So.2d 494 (La. 1976); *Guss v. Jack Tar Management Co.*, 407 F.2d 859 (5th Cir. 1969); *Baumgartner v. State Farm Mut. Auto Ins. Co.*, 356 So.2d 400 (La. 1978).

4. *See, Oliver v. Capitano*, 405 So.2d 1102 (La. App. 4th Cir. 1981) *writ denied*, 407 So.2d 731 (1981).

5. *Driver v. Hinnant*, 356 F.2d 761 (4th Cir. 1966) and *Easter v. District of Columbia*, 361 F.2d 50 (D.C.1966) cited by plaintiff, both involve habeas corpus proceedings attacking a conviction, under criminal law, prohibiting public intoxication. These cases held that since alcoholism is a disease, incarceration of an alcoholic on the grounds of public drunkenness would violate the prohibition of cruel and unusual punishment of the eighth amendment to the United States Constitution. *Bazley v. Tortorich*, 397 So.2d 475 (La.1981) also cited by plaintiff, involved the issue of what constitutes intentional acts, which are held to be outside the protections afforded to employers by the Louisiana Workmen's Compensation Act. The considerations involved in imposing criminal liability on an alcoholic or other person suffering from diminished mental capacity, or in determining whether or not a tort committed by one suffering from an impairment of judgment is intentional, are entirely different from the considerations involved in the determination of whether a plaintiff in a civil action is guilty of contributory negligence.

6. The "reasonable man" test was applied by the Fifth Circuit to an alcoholic who negligently smoked in bed and started a fire, which led to his death in *Guss v. Jack Tar Management*, 407 F.2d 859 (5th Cir. 1969).

7. Plaintiff also argued in his memorandum that defendant LP&L was negligent in failing to insulate the energized wires. This allegation was answered in the negative in the recent Louisiana Supreme Court case of *Kent v. Gulf States Utilities Company*, 418 So.2d 493 (1982) at 500.

court go on to consider whether protection of the plaintiff from his own negligent acts is within the scope of defendant's duty. *See, Knockum v. Amoco Oil. Co.*, 402 So.2d 90, 100 (La.App. 1st Cir. 1981).[8]

In *Palmer v. State*, 393 So.2d 427, 432 (La.App. 3rd Cir. 1981) the Court notes that,

"A cause in fact is a substantial factor in the chain of events culminating in an accident. It is a 'necessary antecedent.' Without it the accident would not have taken place. If the accident would have occurred, regardless of such cause, such cause was not a cause in fact. *Dixie Drive-it-Yourself System, supra.*"

"Therefore, if the accident would have occurred, irrespective of the negligence of the defendants, then their negligence is not a substantial factor or cause in fact."

 For purposes of this motion, it was stipulated that the first step of the pole in question was 6′4½″ from the ground. Plaintiff asserts that in order to prevent access to the wires by the general public, the National Electrical Safety Code requires that steps on utility poles be a minimum of 6′6″ from the ground,[9] and a 6′4½″ height constitutes a breach of duty on the part of the defendant which was a cause in fact of the accident. Additionally, plaintiff asks this court to consider a 1977 amendment to the safety code which requires steps to be a minimum of eight feet off the ground, although he admits that the 1977 code contained a "grandfather clause" and was not "expressly applicable." Moreover, the cases cited in support of this argument are distinguishable and arise in other circuits.[10] Compliance with such safety standards per se does not necessarily relieve the defendant of negligence; later-enacted standards may be admitted as evidence of the proper standard of care when the facts and circumstances indicate such an admission will be helpful. However, under the facts and circumstances of this case, the court finds not only that defendant acted reasonably in complying with the code in effect at the time the system was built[11] but that a one and a half or even a one foot seven and a half inch increase in height would have in no way prevented Martin from climbing the pole.

 The whole escapade was the result of a wager which Martin entered into while intoxicated. According to the diagrams appended to the depositions of Clifford Rouselle and Philip Truxillo, both employees of LP&L, the distance from the ground to the 8,000 volt cable was 29′3″ from the ground, and the distance from the ground to the telephone cable was 18′6″. The steps lead

**8.** *See, also, Laird v. Travelers Insurance Co.*, 263 La. 199, 267 So.2d 714 (1972); *Boyer v. Johnson*, 360 So.2d 1164, 1166 (La.1978); *Lambert v. Maryland Cas. Co.*, 403 So.2d 739 (La. App. 4th Cir. 1981); *Pierrotti v. Assoc. Indem. Corp.*, 399 So.2d 679 (La.App. 1st Cir. 1981).

**9.** As evidence of defendant's duty to have high access steps on its utility poles, plaintiff offers the standards set forth in the National Electric Safety Code, which has been utilized by Louisiana courts in previous cases involving the issue of negligence on the part of utility companies. *See, e.g., Simon v. Southwest La. Elec. Membership*, 390 So.2d 1265, 1268 (La.1980) (cited for proof of proper height off ground); *Olinde v. State*, 391 So.2d 1243 (La.App. 1st Cir. 1980).

**10.** The Court in *Brown v. Cedar Rapids & Iowa City Ry. Co.*, 650 F.2d 159 (8th Cir. 1981) held that the admission into evidence of a later-enacted safety standard, even assuming it to be error, was not reversible error because the evidence in question was merely cumulative while *Curtis v. District of Columbia*, 363 F.2d 973 (D.C.1966) involved a plaintiff who tripped over a protrusion of a vault hinge while walking on a sidewalk and is distinguishable on its facts. The Court held that a later-enacted regulation requiring vault coverings to be flush with the sidewalk paving could be admitted as evidence of a breach of duty on the part of the defendant.

**11.** *See, Olinde v. State*, 391 So.2d 1243 (La. App. 1st Cir. 1980), which involved application of the National Electric Safety Code, the very code cited by plaintiff in the instant case. In *Olinde*, the plaintiff argued that the older code did not establish adequate standards, and that the later-enacted regulation should be used to determine the applicable standard. The Court held that although mere compliance with the safety code does not per se relieve the defendant of liability, it found that the defendant acted reasonably under the circumstances in complying with the code in effect at the time the system was built. *Id.* at 1246.

only to the telephone cable. This means that to get to the 8,000 volt cable, from the top step, Martin had to shinny and pull himself up without the aid of steps. Moreover, it is obvious that plaintiff had to pull and/or shinny himself up to the first step on the pole in order to get his foot on the step, which was well over six feet from the ground. Thus, the alleged infraction of the safety code was not a substantial factor in bringing about plaintiff's injuries. Plaintiff was determined to climb that pole and there is no doubt he would have made it to the top whether the first step was 6'6" or 7 or 8 feet from the ground. Accordingly, I find that the height of the first step was not a cause in fact of the accident.

■ The finding that defendant's alleged negligence was not a cause in fact eliminates the issue of plaintiff's own contributory negligence since a defendant who has committed no actionable negligence is not liable to the plaintiff. *See, Palmer, supra,* at 434. *See, also, Cates v. Beauregard Elec. Coop. Inc.,* 328 So.2d 367 (La.1976).

■ However, assuming arguendo that defendant's acts or omissions were a cause in fact of plaintiff's injuries, I find that plaintiff's own conduct exposed him to dangers that were not within the scope of the defendant's duty. The safety regulations in question were not designed to make the climbing of utility poles *impossible,* nor to prevent the aggressive and irrational behavior exhibited by the plaintiff; they were designed merely to *discourage* the public from climbing utility poles.[12]

■ Application of Louisiana's duty/risk principle involves careful consideration of the particular facts and circumstances of each case. Defendant's liability is established by showing that its conduct is a cause in fact of the harm and that conduct breaches a legal duty imposed on defendant to protect plaintiff against the *particular risk* and *harm involved. Marcum v. U. S.,* 621 F.2d 142, 145 (5th Cir. 1980) (emphasis supplied). If the principle is applied indiscriminately it could easily swallow up the general rule, i.e., that contributory negligence is a bar to recovery.

The cases cited by plaintiff for the proposition that contributory negligence is no bar to recovery when the risk encountered by the plaintiff is within the scope of the defendant's duty are clearly distinguishable from the instant case. *Baumgartner and Oliver, supra,* involved an examination of the mutuality of risks between operators of motor vehicles and pedestrians.[13] *Boyer v. Johnson,* 360 So.2d 1164 (La.1978), involved a state *statute,* as opposed to a regulation promulgated by a nationwide board, wherein the legislature had identified a particular class of persons (minors) to be protected from a particular evil (work related injuries).[14] *Bacile v. Parish of Jefferson,* 411 So.2d 1088 (La.App. 4th Cir. 1982) involved a plaintiff whose foot became lodged in a drain grate opening when she attempted to cross the street, resulting in an injury to

**12.** The National Electric Safety Code 1973 & 1977 edition, provides in pertinent part:
"211 Installation and Maintenance
All electric supply and communication lines and equipment shall be installed and maintained so as to reduce hazards to life *as far as practicable.* (emphasis supplied)
This standard takes into account that the transmission of electricity cannot be made foolproof, "yet it can be done without a high risk of injury. And when the activity results in injury, it is almost always because of substandard conduct on the part of either the utility, the victim, or a third party." *Kent v. Gulf States Utilities Co., supra,* at 499.

**13.** The court in those cases held that negligence on the part of pedestrians should not be considered when "the menacing momentum of a massive automobile intrudes upon the non-menacing presence of a person not operating an automotive vehicle." *Oliver, supra* at 1104. *Dixie Drive-it-Yourself System, supra,* again involved the weighing of risks of a particular fact situation: an oncoming vehicle which collided with another vehicle parked in a lane of traffic at night with no flares or other warning signals indicating its presence.

**14.** *Outlaw v. Bituminous Ins. Co.,* 357 So.2d 1350 (La.App. 4th Cir. 1978) involved a golfer who struck a nine year old with a golf ball. The court held that a child is not held to adult standards of comprehension of danger and duty of self care. This proposition is well-settled in Louisiana. *See, Plauche v. Consolidated Companies,* 235 La. 692, 105 So.2d 269 (La.1958).

her leg. She brought suit against the parish under Article 2317 of the Louisiana Civil Code and the defendant answered that she was negligent in not looking where she stepped. The court held that any inattention on the part of the plaintiff would not bar her recovery because "the purpose of the duty to make grating openings too small to admit a foot is to protect against persons being injured through stepping through the grate because of inattention." *Id.* at 1091. Furthermore, the court noted that the duty of supplying a grating over a basin that "will not admit a foot" is narrowly designed to protect persons from catching their feet in the drain hole. *Id.* at 1090-91.

From the above analysis, it is apparent that the cases lend no support to Martin's case. In those cases, the defendant's negligence was clearly a cause in fact of the plaintiff's injuries, the defendant's duty was clearly designed to protect the plaintiffs from the consequences of their own negligence and the conduct of those plaintiffs was merely inattentiveness or carelessness;[15] their negligence was relatively slight in comparison to the conduct of plaintiff Martin which bordered on recklessness. In fact, I find that Martin's negligence superseded any possible negligence on the part of the defendant and was the sole and proximate cause of his injuries.[16] Utility companies are not insurers of those that come into contact with their wires. Rather, they are held to a standard of reasonableness. *Kent v. Gulf States Utilities Co., supra.* As a matter of law, I find no actionable negligence on the part of LP&L, but

that plaintiff's injuries are solely a result of his own negligent conduct.

---

**15.** A person is not required to exercise the utmost caution at each moment to avoid every hazard of which he was ever aware. Even the "reasonable man" is permitted an occasional lapse of memory. *Soileau v. South Central Bell Tel. Co.*, 406 So.2d 182, 184 (La.1981).

**16.** In *Thrasher v. Leggett*, 373 So.2d 494 (La. 1979), a plaintiff sued a bar owner for injuries sustained when the bar bouncer put him out of the bar for being intoxicated and acting unruly, on the theory that the duty of the bar owner not to serve alcoholic beverages to intoxicated persons contained within its scope the risk that patrons would become unruly; thus, any con-

tributory negligence on the part of the plaintiff could not bar recovery. The Louisiana Supreme Court rejected this reasoning:

There is a real element of contributory negligence implicit in this situation... *Plaintiff's injury did not result from defendant's failure to prevent plaintiff's injury, but rather from plaintiff's own aggressive and violent behavior.* In any event the person who voluntarily engages in drinking has the most proximate opportunity to avoid the effects of intoxication by desisting from drinking or from drinking to excess. 373 So.2d at 496-497 (emphasis supplied).