376 So.2d 367 (1979)
Lutcher WILLIAMS, Plaintiff-Appellant,
v.
CITY OF ALEXANDRIA et al., Defendants-Appellees,
Rockwood Insurance Company and Carbo Foundry & Machine Company, Intervenors-Appellants.
No. 7161.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1979.
Writ Refused November 30, 1979.
*368 McClain, Morgan & Greenwald, Joseph W. Greenwald, and Eugene Thibodeaux, Lake Charles, for plaintiff-appellant.
Gist, Methvin Hughes & Munsterman by David A. Hughes, Alexandria, for defendants-appellees.
Walter M. Hunter, Jr., Alexandria, for intervenors-appellants.
Before CULPEPPER, DOMENGEAUX, and STOKER, JJ.
DOMENGEAUX, Judge.
This damage suit by plaintiff, Lutcher Williams, seeks recovery for injuries he sustained from an accident, allegedly caused by the negligence of the defendant, the City of Alexandria, in the design, installation, placement and maintenance of electrical transmission lines over a public right of way traversing through an industrial area. Also named as a defendant in the original action is the City's insurer, Maryland Casualty Company.
A petition of intervention was filed by Rockwood Insurance Company, the workmen's compensation insurer for plaintiff's employer, Carbo Foundry & Machine Company, and also by Carbo, to recover benefits paid to plaintiff, should the defendants be found liable for plaintiff's injuries.
A bifurcated trial was held in which a jury returned a verdict against the plaintiff, and in favor of Maryland Casualty Company. The trial judge also ruled against plaintiff, and in favor of the City of Alexandria.
Accordingly, judgment was rendered dismissing the demands of the plaintiff and intervenors. They now appeal to us.
On July 28, 1977, Lutcher Williams was employed by Carbo Foundry & Machine Company in Alexandria, Louisiana. Mr. Williams had been instructed by his employer, Larry Carbo, to drive a crane to the front of the Carbo Foundry building so that steel beams could be loaded onto a flat-bed truck for delivery. Rudy Lovato, the foundry's general foreman and crane operator, helped guide the steel beams onto the truck as they were lifted by the plaintiff. This crane was situated directly under electrical *369 transmission lines owned by the City of Alexandria, and was attempting to lift the steel beams over a tall "hurricane" type fence. While Mr. Williams was holding one end of the steel bar, the boom of the crane either touched the overhead electrical transmission wires, or came into such proximity with the wires that the phenomenon called "arcing", a transference of current from one conducting material to another without actual contact, occurred. As a result, an electrical current flowed through the crane's boom into the cable attached to the boom and into the steel beam being held by the plaintiff, causing him to sustain severe and disabling injuries, eventually resulting in the amputation of his right arm and left leg.
The Carbo Foundry & Machine Company site covers approximately two blocks in the City of Alexandria, and is divided by Ashley Street, which runs through the facility. The area surrounding Carbo Foundry is primarily residential, with Carbo being the only industry located within that area. Electrical transmission lines themselves run parallel to Ashley Street, on the south side nearest the machine works division of Carbo Foundry. These transmission lines were constructed and erected in either 1957 or 1958 to help connect a new power plant built by the defendant with the then existing facility.
The transmission lines consist of seven wires attached to a fifty-five foot utility pole. Three lines are located on the bottom cross-bar on Ashley Street, known as the Olive Street feeder lines, and four lines run from the top cross on, identified as the City Park feeder lines. The voltage on these two lines fluctuates from a maximum of 12,470 volts to 13,800 volts on a phase to phase determination (between two energized wires) and between 7,200 to 7,900 volts on a phase to ground reading. At the accident site, the lowest point of the Olive Street feeder lines was 40' 6" from ground level. Evidence introduced in court indicated that the actual line which was struck measured 42' 5" from ground level.
Although the electrical transmission lines which traversed the Carbo Foundry provide no direct service to that facility, the defendant contends that as the equipment is modernized and financing becomes available, these lines will directly provide the residences and industries along its route with electrical service by the use of transformers directly attached to the feeder lines. According to the City of Alexandria, when these lines were installed in the mid fifties, it was planned that some time in the future direct service would be available to customers from the transmission lines themselves.
Plaintiff assigned seven specifications of error upon which he contends that the trial court incorrectly reached its determination as to liability in this case. The essential allegation raised by appellant is that the court erred in its failure to find any actionable negligence on the part of the City of Alexandria and its insurer, which proximately caused the accident. Similarly, in this respect, plaintiff contends that the trial judge failed to properly apply the duty risk doctrine in determining the liability of the defendant. Plaintiff also objects to several of the instructions given to the jury by the trial judge and to the court's failure to instruct the jury as to the obligation of the utility owner to determine the type of work performed at locations over which its lines passed, and as to its duty to insulate all wires throughout a company's system. Plaintiff also objected to the form in which special interrogatories were submitted. Special interrogatory no. 1, submitted to the jury in its determination as to Maryland Casualty Company's liability, read:
"1. Was the City of Alexandria negligent in the design, location, placement and maintenance of the electrical lines involved in this accident and, if so, was this negligence a proximate cause of the accident?"
To this question, the jury responded in the negative, finding that there was no negligence on the part of the City of Alexandria, and therefore, holding the defendant, Maryland Casualty Company, not liable for the injuries suffered by the plaintiff.
*370 Similarly, the trial judge found that the City of Alexandria was not liable and that the plaintiff had failed to prove any actionable negligence on the part of the city that proximately caused this accident. The trial judge concluded that "the sole cause of the accident . . . was the crane operator in raising the boom knowing the lines were there and coming in contact with the same." The court found that the doctrine of duty risk did not, under these circumstances, impose any liability upon the city for its construction, use or maintenance of the electrical lines located above defendant's place of employment.
Negligence is conduct which creates an unreasonable risk of foreseeable harm to others. Negligent conduct becomes a cause in fact of harm to another if it was a substantial factor in bringing about that harm. Negligence is determined by the existence of a risk or hazard and by the violation of a duty to protect certain individuals from such risk. Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1970). Where the risk of harm encountered by a plaintiff falls within the scope of protection to which a defendant is under a duty to extend, and where there is a breach of that duty, the defendant then becomes liable for any injury resulting to the plaintiff arising from the particular risk or hazard which exists. Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962); Dyson v. Gulf Modular Corporation, 338 So.2d 1385 (La.1976).
In applying these principles to the instant action, the crucial test becomes one of determining what duty was owed by the City of Alexandria in maintaining its electric lines, what risk was created by the facts of this particular case and to what extent were plaintiff's resulting injuries foreseeable to the defendant under the existing facts which resulted in this action.
It is clear that a utility company or any agency maintaining a potentially dangerous facility, such as electrical transmission lines is held to a high degree of care, and is liable for damages to any person who might foreseeably contact the wire which creates the hazardous condition. See: McKowen v. Gulf States Utilities Co., 358 So.2d 675 (La.App. 1st Cir. 1978); Burley v. Louisiana Power and Light Company, 327 So.2d 585 (La.App. 4th Cir. 1976), writ denied 331 So.2d 455 (La.1976), and 332 So.2d 278 (La.1976). Accordingly, a utility company is negligent where it has failed to take practical steps to reduce the hazard of the line by providing such clearance as is reasonably required for the reasonable, foreseeable use of the surface below, and by its failure to provide guards to effectively isolate its line from accidental contact by persons using the surface below. The operator is required to sue the utmost care to reduce the hazards of life as far as practical, and in places where it should be reasonably anticipated that persons may contact electrical lines. However, an operator is not required to guard against hazards which could not be reasonably anticipated. Nessmith v. Central Louisiana Electric Company, 257 So.2d 744 (La.App. 3rd Cir. 1972), writ denied 261 La. 480, 259 So.2d 921 (1972), 261 La. 483, 259 So.2d 922 (1972); Cooksey v. Central Louisiana Electric Company, Inc., 279 So.2d 242 (La.App. 3rd Cir. 1973). Thus, the mere existence of electric transmission lines constitutes adequate notice of fact that it does carry electricity, and absent some peculiar and unusual circumstances, the operator of such a line is not required to post warning signs all along its lines or on all posts advising that the line is energized. Bordelon v. Continental Casualty Company, 229 So.2d 761 (La.App. 3rd Cir. 1969); Nessmith v. Central Louisiana Electric Company, supra.
Plaintiff's central theory of liability in this case is that the defendant was negligent in failing to insulate its wires which passed over an industrialized area, and which were located at such a height wherein it was not unforeseeable that equipment utilized within the industrial concern may come in contact with defendant's transmission lines. However, a careful review of the record in this instance will reveal that the defendant was not negligent in its construction *371 and erection of the transmission lines at the location in question, nor was it reasonable at the time these lines were erected, for the defendant to foresee that there was any danger or risk of any object coming in contact with its wires at their location and height.
Albert Carbo, part owner of the Carbo Foundry & Machine Company, testified that the Foundry makes cast-iron castings, in the nature of manhole rings, covers, grates and frames, sprockets and gears for sawmills, and various parts for sugar refineries in the area. Mr. Carbo stated that the Foundry had only two Gib cranes for use around the premises, an overhead traveling crane located inside the machine shop, and a winch truck with a maximum height of thirty feet. Thus, at the time the electric lines were erected, Carbo Foundry did not utilize any equipment capable of contacting the wires in question, nor did the foundry produce any material or product which might necessitate a larger piece of equipment that could possibly contact defendant's wires.
The crane involved in this accident was acquired about one year prior to the occurrence of this incident. Mr. Carbo stated that the crane itself was used on job sites away from the shop and foundry, and on the several occasions that it had been used on Ashley Street, it had been used behind the machine shop on the northeast side of Ashley Street for the loading and unloading of structural steel. This incident was the very first time that the crane had ever been used at this location.
Plaintiff's experts, Louis Linsly and Ambrose Ramsey, testified as to the various heights and measurements of the transmission wires at the location of the accident. The plaintiff's experts reluctantly agreed, that of the classifications listed in the National Electrical Safety Code, the classification most reasonably applicable to this particular accident requires a vertical clearance of only twenty feet from the ground to the lowest point of the transmission wires. The highest vertical clearance required over land by the code is twenty-eight feet, and the very highest vertical clearance required by the code under any circumstances, is forty feet, concerning the regulation of electrical lines which cross water areas in excess of 2,000 acres where sailboating could be expected. Thus, under the guidelines and regulations of the National Electrical Safety Code, the lines in question meet the standard set for the very maximum height required under any circumstances, some twenty feet higher than would otherwise be required under the code for the particular location of these transmission lines.
Under these circumstances, it is apparent that the defendant was not negligent in its installation of electrical transmission lines over the Carbo Foundry facility. The lines more than adequately met industry's standards for safety under any particular circumstances. The record in this case indicates that the defendant could not have foreseen any risk of harm resulting to any individual in the erection of its wires at the instant location. At the time these lines were installed Carbo Foundry had no equipment which could possibly come in contact with the line, nor was there any probability that the Foundry would require any additional equipment that could conceivably contact these lines. We find that the City of Alexandria owed no duty to this particular plaintiff to prevent the type of risk he encountered for the reason that such an occurrence was not foreseeable under the circumstances of this case.
A careful review of this record indicates that the sole proximate cause of this accident was the negligence of the crane operator in moving and positioning the crane too close to the wires of which he was fully aware and purposely trying to avoid. Similarly, the instructions by plaintiff's employer to load the truck at this particular location were a contributing cause to the occurrence of the accident. As indicated earlier, the crane was attempting to lift the steel beams over a tall "hurricane" style fence and those parties directly involved should have foreseen that such an operation in close proximity to the overhead electrical *372 wires would risk the danger that contact would be made with the transmission lines. Were it not for the existence of La.R.S. 23:1032, which bars recovery by an employee from a third-party tort feasor where the employee has fully recovered under the workmen's compensation statute, the crane operator in this instance and possibly the foundry supervisor would be liable for plaintiff's injuries. However, the law is clear that the plaintiff in the instant action cannot recover against these individuals and, therefore, is limited to his recovery in workmen's compensation.
Plaintiff objects to the special interrogatories presented to the jury by the trial judge and to certain jury instructions which were given to the jury and several instructions which the court refused to present. The record in this case is clear that the plaintiff failed to object to the inclusion or exclusion of these instructions at the time of trial and, therefore, under the existing jurisprudence, is considered to have waived his right to object to these instructions on appeal. See: Kolmaister v. Connecticut General Life Insurance, 370 So.2d 630 (La. App. 4th Cir. 1979); Fincher v. Surrette, 365 So.2d 860 (La.App. 4th Cir. 1978); La. C.C.P. Art. 1793. Similarly, the plaintiff who has failed to object to the wording of special interrogatories in the trial court has waived his right to complaint about these interrogatories on appeal. Mones v. Walton, 296 So.2d 370 (La.App. 4th Cir. 1974), writ denied 300 So.2d 185 (La.1974); La. C.C.P. Art. 1793.
Accordingly, this court finds that the jury's determination is amply supported by the record and that the trial judge committed no manifest error in holding that the City of Alexandria was not liable for the injuries plaintiff sustained.
For the above and foregoing reasons, the judgment of the trial court is affirmed and all costs of this appeal are assessed against the plaintiff-appellant and intervenors-appellants.
AFFIRMED.