FORET, Judge.
This is a suit for wrongful death brought as a result of the deaths of Harold John Simon and Marvin Vincent. Sandra Le-Blanc Simon brought suit on her own behalf and as natural tutrix of the two minor children born of the marriage between her and the deceased, Harold John Simon, against Southwest Louisiana Electric Membership Corp. (hereafter SLEMCO). Likewise, Deliha Roy Vincent brought suit on her own behalf and as natural tutrix of the two minor children bom of the marriage between her and Marvin Vincent, against SLEMCO.
These two cases were consolidated for trial. An Acadia Parish jury rendered a verdict in favor of SLEMCO in both suits and against the respective plaintiffs. Both matters are before us on appeal, and separate judgments will be rendered in each.
The issue presented is:
Was the jury verdict erroneous as a matter of law? We hold that it was not.
On June 8, 1975, Bufford Richard, Jerry Thompson, Heulan Vincent, Michael Vincent and Percy Vincent were engaged in drilling a water well on a lot owned by Michael Vincent in Acadia Parish. Harold John Simon was also present but took no part in the drilling operation, but was instead preparing a bar-b-que for the friends and relatives of the above mentioned individuals as a part of an anniversary celebration given in honor of Mr. and Mrs. Percy Vincent. The drilling site was located approximately fifteen feet from a high voltage electrical line owned and maintained by SLEMCO.
A hand-turned auger was being used to drill the well, a method not uncommon thirty or forty years ago. As the auger was screwed deeper into the ground, a three- *1244 foot section of three-quarter-inch pipe was attached to the end protruding out of the ground to enable the men to drill deeper. The auger was periodically pulled out of the hole so that the soil which accumulated around the auger could be removed. Once the soil was removed, the auger was replaced in the hole and drilling continued. The three-foot sections of pipe which were connected to the auger and each other were not disconnected each time the auger was pulled out. The entire drilling apparatus, once all the sections of pipe were connected, was approximately forty-two feet long. Each time the apparatus was pulled out, the length thereof was increased by the connection of additional three-foot sections of pipe. Once the desired depth was reached, the auger and pipe connections were removed in one piece, i. e., without disconnecting each three-foot section as it came out of the hole.
The top end of the forty-two-foot-long drilling apparatus came in contact with the high voltage power lines located near the well hole when the workers were attempting to move the apparatus. The contact caused the pipe to become energized and resulted in Heulan Vincent, Percy Vincent, and Marvin Vincent receiving severe electrical shock. Marvin Vincent died as a result of the charge he received while Percy and Heulan Vincent were rendered unconscious.
Harold John Simon, who was some distance away at the time of the accident, ran to the rescue of the victims once he was apprised of the situation. As stated earlier, Simon was not engaged in the drilling operation. In an attempt to save the lives of friends, Simon attempted to lift the electrified pipe off of the bodies of Percy, Marvin, and Heulan Vincent. His first attempt was unsuccessful, the electric shock having knocked him down. Again he tried to lift the pipe and remove it from the bodies of his friends. This time the charge he received knocked him some ten to twelve feet from the area. He too, like Marvin Vincent, was pronounced 'dead at the scene by the Acadia Parish Coroner.
Three days prior to this accident, a SLEMCO line crew was present on the premises where the accident occurred. The crew was comprised of John L. Lejeune, Patrick H. Prather, and Emery Clarke. Each of the three members of the SLEMCO créw testified that a warning was given to Percy Vincent as to the danger which could result from coming into contact with the SLEMCO power line. It is undisputed that at no time did any SLEMCO employee give any warning to anyone else other than Percy Vincent. The survivors of the accident, including Percy Vincent, deny ever having been warned about the high voltage line.
The line was approximately twenty-six feet above the ground, or about ten to eleven feet higher than that required by the National Electrical Safety Code.
The duty imposed upon operators of high voltage electric lines is to use the utmost care to reduce hazards to life as far as is practicable. Nessmith v. Central Louisiana Electric Co., 257 So.2d 744 (La.App. 3 Cir. 1972), writ denied, 261 La. 480, 259 So.2d 921 (1972), 261 La. 483, 259 So.2d 922 (1972); Williams v. City of Alexandria, 376 So.2d 367 (La.App. 3 Cir. 1979); Bordelon v. Continental Casualty Co., 229 So.2d 761 (La.App. 3 Cir. 1969), writ den., 255 La. 483, 231 So.2d 396 (La.1970); Sonier v. Louisiana Power & Light Co., 293 So.2d 24 (La.App. 1 Cir. 1974). It is also well settled that where it should be reasonably anticipated that persons may come into contact with electric lines, the operator of those lines is required to insulate them, or to give adequate warning of the danger, or to take other proper and reasonable precautions to prevent injury. Williams, supra; Nessmith, supra. In stating the duty of operators of power lines, we note that although they are to guard against reasonably foreseeable hazards, they are not required to anticipate every possible accident which may occur and are not the insurers of the safety of persons moving around power lines in the course of everyday living. See Allien v. Louisiana Power and Light Co., 202 So.2d 704 (La.App. 3 Cir. 1967).
*1245 There are several significant factors which we have given great weight in deciding this case. Vincent, by exercising the de minimis amount of caution, could have avoided this accident. All parties engaged in the drilling operation knew the pipe, once removed from the hole, swayed considerably and was . quite flexible. Electric wires strung from pole to pole are tantamount to an announcement of danger to almost anyone possessed of sufficient age and means to come into contact with wires twenty-six feet above the ground. See Cates v. Beauregard Electric Co-Operative, Inc., 328 So.2d 367 (La.1976). SLEMCO could have been called upon to de-energize this line during the drilling operation. Each three-foot section of pipe could have been disconnected as it was pulled from the hole, thus eliminating the possibility of the awkward forty-two-foot section of pipe coming into contact with the high voltage wire. The wire at the point of contact was 26.7 feet above the ground, or about 11.7 feet higher than that required by the National Electric Safety Code for a power line of this type (Trial Rec., pg. 248, 250). To hold SLEMCO liable under the facts of this case would be to make operators of high voltage lines insurers of the safety of virtually anyone coming into contact with their lines, no matter how.
We are aware that those who undertake rescue activities are provided special consideration by the law. The doctrine that a rescuer occupies a special status in law is well recognized in Louisiana. Lynch v. Fisher, 41 So.2d 692 (La.App. 2 Cir. 1949); Dodge v. Pierre, 348 So.2d 167 (La.App. 3 Cir. 1977), writ ref., 351 So.2d 165 (La.1977). The Court is conscious of the status of Harold John Simon as a rescuer. However, we are unable to find any conduct on the part of SLEMCO which could be construed as actionable negligence, thereby entitling any of the plaintiffs to recover. For the foregoing reasons, the judgment of the trial court is affirmed.
All costs of this appeal are taxed against plaintiffs-appellants.
AFFIRMED.