COLE, Judge.
The issue in this personal injury case is whether or not plaintiff-appellant’s conduct should bar his recovery. Because we find the trial court did not commit manifest error in finding in favor of defendant-ap-pellee, we affirm.
This litigation arose from the following facts. The appellant, Brownie Reed Hebert, was employed by Southern Structures, Inc., as an iron pusher. In the summer of 1977 he was working as the foreman of a crew constructing a metal building in the Choctaw Drive area of Baton Rouge. Hebert had trained for three years at a trade school in the field of iron working and had been employed by Southern Structures for approximately one and a half years. He had been involved in the construction of approximately 20 metal buildings.
On July 28, 1977, Mr. Hebert was operating a crane boom referred to as a “cherry picker.” While attempting to hoist a sheet of metal, the crane became entangled in the nearby power lines. The lines, owned by Gulf States Utilities Company (GSU), consisted of four separate wires running east to west. Three of the wires were energized, one was a neutral line. No one was injured but electrical service to the area was severed. Mr. T. Odis McKnight, special legal investigator for Gulf States Utilities, visited the construction site, supervised the removal of the boom from the lines, and admonished Hebert for contacting the power lines. There is some dispute in the record concerning the exact nature of the conversation between McKnight and Hebert, but the evidence indicates there was no discussion about deenergizing or relocating the lines in order to insure the safety of the workers as they continued the construction of the building. Mr. McKnight testified Mr. Hebert assured him the crane would not be used again and the lines would pose no problem to the continuation of the construction. The record shows the lines were “insulated by isolation,” i. e., they were placed so they were isolated from contact with humans, but were not covered with protective material.
Four days later, on August 1, 1977, the accident which is the subject of this litigation occurred. Mr. Hebert climbed a ladder and stood on the end wall rafter of the partially constructed building. His intention was to lift and secure a 20 foot long metal fascial angle iron, which would run from the side wall of the building to the peak of the roof. When he reached the top of the ladder he stood on the end wall beam which was about 18 feet from the ground. He testified the rafter was somewhat wobbly so he had to concentrate on keeping his balance. Once he reached his ultimate position he turned his back to the electrical lines and reached for the fascial angle iron which was leaning against the outside of the building. He began to pull the angle *834 iron up toward him, hand over hand, until his hands reached the middle portion of the iron. He then began to twist the iron in order to position it properly. At this point the iron made contact with the southernmost electrical line which carried 7,600 volts of electricity. Mr. Hebert was severely burned by the current, was knocked unconscious, and fell to the ground. He suffered serious burns on his hands and feet and underwent several operations. As of trial he was unable to put any weight on the heels of his feet and was able to walk only by walking on the balls of his feet.
Mr. Hebert filed suit against Gulf States Utilities Company, the owner of the line, and against Kelly R. Parrino, the owner of the property. Mr. Parrino was dismissed on a motion for summary judgment because of the exclusiveness of workmen's compensation remedy, and this court upheld that dismissal. Hebert v. Gulf States Utilities Co., 369 So.2d 1104 (La.App. 1st Cir. 1979), writ denied 1979.
After a trial by jury a verdict was returned in favor of GSU and judgment was entered accordingly. Appellant appeals and assigns three errors: first, that the judgment was erroneous in holding GSU free from fault; second, that the judgment was erroneous in not finding in favor of Brownie Reed Hebert; and third, that the court erred in failing to give certain special jury instructions.
The appellate court’s role in cases involving the correctness of jury instructions was clarified in Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). The Supreme Court relied on La.Const. art. VII, § 29 (1921) [now art. V, § 10(B)] for the proposition that even if the trial court erred in giving or failing to give special jury instructions, the appellate court is to decide the case on the record rather than remand it to the trial court. This philosophy was-recently reiterated and explained in Ragas v. Argonaut Southwest Ins. Co., et al., 388 So.2d 707 (La.1980). In Ragas the court explained the seeming inconsistency between the manifest error rule and the Gonzales procedure that requires an original finding of facts by the appellate court. The Ragas court explained the manifest error rule deals with the fact finding function of the trial court and assumes the legal issues were correctly decided. The Gonzales rule treats the situation where there has been a legal error committed by the trial court. In the latter case, the appellate court should examine the record and decide the issue without remanding the case to the trial court, provided the weight of the evidence is not so nearly equal that a first-hand view of witnesses is essential to a fair resolution of the issues.
In light of the pronouncements of Gonzales, supra, and Ragas, supra, we need not dwell upon the alleged errors in jury instruction, for even if we found error in the failure to give certain instructions, the recent jurisprudence mandates, we simply decide the case based upon a careful examination of the record. This record reveals that regardless of the jury instructions, the verdict of the jury was correct. A preponderance of the relevant and operative evidence is easily ascertained from the cold record rendering unnecessary a view of the witnesses.
Appellant’s first assignment of error, that the judgment was erroneous in finding GSU free of fault, presents somewhat of a problem. It is unclear from the jury verdict whether or not the jury found GSU to be free of fault. It is true that the verdict was in favor of GSU but it is possible the jury found GSU to be at fault but rendered a verdict in GSU’s favor because they found Hebert’s conduct to have barred his recovery. Appellant’s second assigned error, that the judgment was erroneous in not finding in favor of Brownie Reed Hebert, seems to speak more directly to the crux of the case and we must focus our review upon this allegation of error.
We find the jury did not err in failing to find in favor of Mr. Hebert. We reach this conclusion without deciding whether or not GSU was free of fault. A careful examination of the record convinces us Mr. Hebert’s conduct was sufficiently careless so as to bar his recovery even if GSU was at fault. *835 The jury was instructed on several theories of liability: regular negligence, strict liability under La.Civ. Code art. 2317,[1] and special mention was made of the high degree of care owed by a utility company. Certainly, the record shows Mr. Hebert’s behavior fell below the standard of a reasonably prudent person and he would be barred from recovery under the regular negligence standard. The record also supports the conclusion that even if the jury reached its verdict under the 2317 strict liability standard, the accident was caused by “fault of the victim” so as to bar his recovery under that theory also.
The facts as revealed by the evidence leave no doubt Mr. Hebert was aware of the existence of the power lines. This was shown by the fact his crane became entangled in the electric lines only four days before the accident. He was not injured at that time because his position at the moment of contact did not allow an electrical shock to occur. However, he admitted at trial he was aware of the inherent danger of the lines and knew it was important not to touch them with the equipment. After the incident involving the crane, Mr. Hebert discussed the problem with Mr. McKnight and assured him the lines would pose no further problems because the crane was not going to be used again.
The record shows that as Mr. Hebert climbed the ladder he was facing the electrical lines. The building was approximately 18 feet tall and the wires were approximately 26 feet above the ground or 8 feet above the building.[2] Assuming that Mr. Hebert is at least five and one half feet tall, the wires were only two and one half feet higher than his head as he stood on the end wall rafter. And, the line was only three and one half feet away (horizontally) from the building.[3] In spite of the obvious proximity of the lines, Mr. Hebert positioned himself with his back to the lines and began to pull up the long angle iron. He testified his main concern at the moment preceding the accident was the maintenance of his balance. While this is certainly understandable, we cannot escape the conclusion that he voluntarily exposed himself to an unreasonable risk in choosing to handle the iron with little or no regard for the electrical lines only several feet away. In short, Mr. Hebert knew the lines were close to the building, he knew they were dangerous, he knew it was quite easy to inadvertently make contact with the lines as evidenced by the previous incident with the crane, yet he proceeded to put his back to the lines and lift the awkward angle iron with little or no concern for the possibility that the iron might touch the electrical lines. It is evident this lack of caution on his part constitutes fault sufficient to bar his recovery under any theory of liability.
An examination of the jurisprudence reveals numerous cases involving plaintiffs who were electrocuted or severely shocked when their equipment contacted overhead electrical wires. In several of the cases the plaintiff’s conduct barred his recovery.
The facts of Kent v. Gulf States Utilities Company, No. 13,205,-So.2d-(La. App. 1st Cir. 1980), are similar to the instant case. Plaintiff, an 18 year old construction worker, was using a 30 foot long metal rake to make grooves on the freshly poured highway surface. He and his coworker devised a “flip-flop” method of moving the rake from one side of the highway to the other side. As they progressed closer to the power lines hanging nearby, an inspector warned them of the lines. The young men acknowledged the lines’ presence. The coworker testified he and Kent discussed the danger of the lines as they worked. Only moments before the long *836 handle of the rake made contact with the line, another coworker warned them of the lines. At that point, Kent joked about his coworker being electrocuted. Kent was seriously and permanently injured by the severe electrical shock he received when the rake handle touched the electrical lines. This court reversed a jury trial award finding plaintiff’s behavior sufficiently negligent to bar his recovery under any one of the three possible theories: negligence, La. Civ. Code art. 2317 strict liability, or ultra-hazardous activity. The court stated:
“For purposes of this decision, we need not look beyond the principle that where the facts of a case prove plaintiff fully understood the danger which was involved and then voluntarily exposed himself to the danger, he is guilty of victim fault precluding recovery. In plain language, facts which establish the defense of assumption of risk are always sufficient to establish the defense of victim fault as related to imposition of strict liability.”
The holding of Kent guides our reasoning in this case. Both cases involve workers who were aware of the overhead lines and of their inherent danger. In Kent there were numerous warnings by coworkers; in the present case there was a previous accident only days before. Both plaintiffs were working with long, awkward pieces of metal. Both plaintiffs voluntarily exposed themselves to an unreasonable risk by working in close proximity of clearly visible lines without taking the necessary care to avoid making contact.
In Bolden v. New Orleans Public Service, Inc., 349 So.2d 377 (La.App. 4th Cir. 1977), writ refused 1977, plaintiff an 18 year old, was attempting to erect an aluminum TV antenna. The antenna touched an overhead wire and plaintiff suffered severe electrical shocks. The court denied recovery finding plaintiff’s behavior constituted contributory negligence.
“It has been well established in the jurisprudence of this state that a person who knowingly allows a metal object to come into contact with an uninsulated energized wire is deemed to be contribu-torily negligent.”
The facts of Simon v. Southwest Louisiana Elec. Membership Corp., 380 So.2d 1242 (La.App. 3d Cir. 1980), consolidated with Vincent v. Southwest La. Elec. Membership Corp., 380 So.2d 1245 (La.App. 3d Cir. 1980), are similar to the facts in the present case. Decedent was engaged in drilling a water well in Acadia Parish. The procedure involved using a hand-turned auger. As the auger was screwed into the ground a three foot section of three quarter inch pipe was attached to the top end of the auger. The auger was periodically pulled up in order to remove the soil from around it. After all the sections of the pipe were connected the drilling apparatus was about forty-two feet long. A high voltage line was located approximately 15 feet from the drilling site. The line, like the line in the present case, was about twenty-six feet above the ground, or about ten to eleven feet higher than required by the National Electric Safety Code. The top end of the drilling apparatus came in contact with the power line and decedent was electrocuted.
The Third Circuit refused to allow decedent’s spouse to recover for his wrongful death finding decedent’s behavior barred his recovery. The court stated:
“Vincent, by exercising the de minimis amount of caution could have avoided this accident. All parties engaged in the drilling operation knew the pipe, once removed from the hole, swayed considerably and was quite flexible.”
The appellate court then discussed various alternative measures that could have been taken by the plaintiff and noted that the line, like the one in the present case, was constructed at a height quite a bit higher than required by the National Electric Safety Code. The Simon court went on to say:
“To hold SLEMCO liable under the facts of this case would be to make operators of high voltage lines insurers of the safety of virtually anyone coming into contact with their lines, no matter how.”
*837 The Simon and Vincent cases were affirmed October 20, 1980, by the Supreme Court (Docket Numbers 67,311 and 67,356). The Supreme Court did not reach the issue of contributory negligence, finding the defendant utility company had not breached its duty to the plaintiffs. The court noted that a few days before the accident defendant’s employee had warned the men digging the well of the presence of the nearby power lines. The court said:
“Under the circumstances, this warning by SLEMCO employees to this individual, coupled with SLEMCO’s placement of these lines so that their presence was apparent to others, were sufficient to discharge the duty of care owed to the decedents by SLEMCO.”
Following this line of reasoning one might conclude GSU, like SLEMCO, fulfilled its duty to plaintiff by discussing the presence of the lines with him several days before the accident, and by placing the lines so they were in clear view of anyone working near them.
The facts of Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976), rehearing denied 1976, are quite different from the present case and therefore we need not dwell upon its holding. However, the Court made an observation that is pertinent to all cases involving injuries caused by electrical lines. The court stated:
“Electric wires on a pole are an announcement of danger to almost anyone smart enough and old enough to get himself in contact with a wire 28 feet above the ground.”
We agree with this observation and feel the facts indicate Mr. Hebert ignored the “announcement of danger” and proceeded to operate as though he was nowhere near any electrical lines.
Plaintiff-appellant cites Boure v. New Orleans Public Service, Inc., 255 So.2d 776 (La.App. 4th Cir. 1971), writ refused 1972, for the proposition that when there is reason to apprehend that persons may come in contact with wires, the wires should be protected in some manner. We find the facts of Boure make it easily distinguishable from the present case. In Boure plaintiff, an industrial painter, was engaged in spray painting the underside of Interstate 10 bridge over the Industrial Canal in New Orleans. Sixteen feet below the bridge were several uninsulated wires carrying 115,000 volts apiece. As plaintiff was using the spray gun with a 200-250 foot hose, the hose hit the line and shocked him. The court found plaintiff free from negligence because the accident was not attributable to a failure to take adequate measures to protect himself. Apparently the trial court found the manner in which plaintiff was operating the spray gun to be entirely reasonable. The court noted that another employee had the duty to see the hose was tautly stretched so as to avoid hitting the line. The plaintiff had no control over the location and position of the equipment. We find the lack of control by the injured employee makes this case quite different from the ease at hand where Mr. Hebert was in charge of the job and had complete discretion as to how to handle the angle iron. Mr. Boure was apparently simply following the orders of his superiors while Mr. Hebert had no one to answer to but himself and could have chosen to handle the iron in a more cautious manner. Therefore, because of this factual difference, we find the holding of the Boure case to be inapplicable here.
Another case relied upon by appellant, Burley v. Louisiana Power & Light Company, 327 So.2d 585 (La.App. 4th Cir. 1976), also contains quite different facts from the case at hand. In Burley, plaintiff was involved in threading a 25 foot long rod into a beam. He was sitting atop a partially constructed building, his back to the wires that stood five feet seven inches from the edge of the building. The building and the wires were both approximately 31 feet tall. Contrary to the present case, plaintiff was unaware of the existence of the wires and the fact that the wires were the same height as the building made them hard to see. The accident occurred on plaintiff’s first day on the job, only several hours after plaintiff had arrived. The evidence showed another *838 employee had worked at the site for a week before he noticed the power lines. This is clearly different from the case at hand where plaintiff was aware of the wires as evidenced by the accident only four days before. Again, we cannot rely upon the holding of Burley because of the significant factual distinction.
We conclude the jury verdict in favor of GSU is not erroneous. Plaintiff’s conduct was sufficiently careless so as to bar his recovery under any theory of liability. To hold differently would be to make a utility company an insurer of the safety of all persons, including those like Mr. Hebert, who are intelligent, mature adults, completely aware of the existence of the power lines and of their inherent danger. The circumstances of the instant case mandated that Mr. Hebert proceed with the utmost of caution in order to avoid contacting the lines. The evidence shows he did not exercise the caution of a reasonably prudent person, but instead voluntarily exposed himself to a known danger. For these reasons, the judgment of the trial court is affirmed. Appellant is to pay all costs.
AFFIRMED.

.Article 2317 reads as follows: “We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.”

. The 1961 National Electric Safety Code, the code applicable to these electric lines which were constructed in 1967, requires the line to be at least 15 feet above ground.

. The same code requires a minimal horizontal clearance of 3 feet.