GUIDRY, Judge.
This is a suit for property damages. Plaintiff, Roland Rodgers, filed this suit against defendants, Missouri Pacific Railroad Company (hereafter, MoPac), W. B. Lindsey, and Lindsey Plumbing, Inc., to recover property damages resulting from a collision between a train owned and operated by MoPac and a 580 B. Case Tractor (more commonly referred to as a “backhoe”) owned by the plaintiff and leased to Lindsey Plumbing, Inc. MoPac filed a third party demand against R. L. Grisby, the operator of the backhoe, contending that if MoPac is held liable to the plaintiff, it is entitled to contribution from Grisby since his negligence proximately contributed to the accident.
On or about August 10, 1979, plaintiff leased a 580 B. Case Tractor (backhoe) to Lindsey Plumbing, Inc. at a rate of $15.00 per hour. Lindsey Plumbing, Inc. thereafter contracted with defendant, MoPac, to provide the backhoe and an operator, R. L. Grisby, to assist in the repair of a railroad crossing. On August 15, 1979, at approximately 1:00 p.m., during a lull in the crossing repair work, Grisby parked the backhoe as close to the railroad crossing barrier as possible, and went to his truck to take some medicine.[1] Approximately three minutes after parking the tractor and without any prior warning, Grisby heard one of the work crew members yell that a train was approaching the crossing. Upon seeing the oncoming train, Grisby immediately ran to the backhoe to move it to a position of safety. Grisby testified that the tractor is equipped with a starting gear and that in his haste to start the engine, he missed the gear and was unable to move the machine. Shortly thereafter, Grisby jumped to safety at the urging of his co-workers. Although the front of the train did not strike the tractor the backhoe was damaged when a handrail extending from the locomotive struck the bucket of the backhoe resulting in extensive structural damage to the machine.
The trial court held in favor of the plaintiff and against MoPac awarding damages in the sum of $9,459.79. The trial court dismissed plaintiff’s demands against Lindsey Plumbing, Inc., and as well, dismissed MoPac’s third party demand against R. L. Grisby. Costs of the trial court proceedings were assessed to MoPac. MoPac appeals from that judgment. The plaintiff and other defendants have neither appealed nor answered the appeal of MoPac.[2]
The issues presented on appeal are: (1) Was MoPac guilty of any negligence? (2) Was Grisby, the operator of the backhoe, *573 guilty of any negligence? (3) Was the trial court’s award of damages to plaintiff for loss of income due to the inoperativeness of the machine excessive?
The trial court concluded that Mo-Pac had an obligation to warn Grisby and its other employees, doing repair work at the crossing, of the approach of oncoming trains and that its failure to do so on the occasion in question was the sole proximate cause of the accident. MoPac contends that the trial court erred in concluding that it had a duty to provide advance warning to Grisby and his co-workers of the approach of oncoming trains and that its breach of such duty was the cause-in-fact of the accident.
In Williams v. City of Alexandria, 376 So.2d 367 (La.App.3rd Cir. 1979), writ denied, 378 So.2d 432 (La.1979), our court stated:

“Negligence is conduct which creates an unreasonable risk of foreseeable harm to others. Negligent conduct becomes a cause in fact of harm to another if it was a substantial factor in bringing about that harm. Negligence is determined by the existence of a risk or hazard and by the violation of a duty to protect certain individuals from such risk. Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1970). Where the risk of harm encountered by a plaintiff falls within the scope of protection to which a defendant is under a duty to extend, and where there is a breach of that duty, the defendant then becomes liable for any injury resulting to the plaintiff arising from the particular risk or hazard which exists. Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962); Dyson v. Gulf Modular Corporation, 338 So.2d 1385 (La.1976).”

The record reflects, and MoPac concedes in brief, that it is the established policy of MoPac to provide workers engaged in the repair and maintenance of railroad crossings with advance warning of approaching trains. This policy is carried out by a warning being delivered to the Section Foreman a reasonable time prior to the arrival of a train. The Section Foreman upon receiving such notice in turn warns his work crew and makes certain that all equipment and personnel are sufficiently clear of the tracks prior to passage of the train. R. L. Grisby, the operator of the baekhoe, testified that he had worked at other crossings on several previous occasions and that each time he and other crew members were given advance warning of approaching trains. Billy Jennings, Section Foreman for MoPac on the day of the collision, testified that he had been advised on the morning of the accident to expect a train at an unspecified time later that day. However, Jennings stated that he received no subsequent information regarding the location of the subject train and that he did not remember giving Grisby any warning regarding the expected arrival of the locomotive at the subject railroad crossing.
The approach of a train to a crossing being repaired, without prior warning to those individuals engaged in the repair work, clearly creates an unreasonable risk of harm to the men and equipment engaged in the repair work. The risk of foreseeable harm posed by failing to warn work crews in advance of oncoming trains was recognized by MoPac in that it had an established policy requiring such warning. The record reflects that MoPac assigned to their Section Foreman the task of warning the repair crew and cheeking the tracks to insure that all equipment and personnel were clear of the tracks long prior to the arrival of a train at the crossing. Although the usual practices and policies of a company are not conclusive or controlling when determining if sufficient care has been exercised, it is certainly a factor to be considered.
Under the circumstances of this case we conclude that MoPac had a duty to Grisby and its other employees to provide advance warning of the approach of any train to the crossing being repaired. MoPac violated this duty.
*574 Defendant contends that the trial court erred in concluding that MoPac’s failure to warn Grisby of the approach of the train was the cause-in-fact of plaintiff’s damages.
In Stewart v. Gibson Products Co. of Natchitoches Parish, La., Inc., 300 So.2d 870 (La.App.3rd Cir. 1974), our court in discussing cause-in-fact stated:
“Liability does not attach unless the conduct complained of bears a causal connection in fact to the occurrence of the accident. Craig v. Burch, 228 So.2d 728, 729 (La.App. 1 Cir. 1969). If the acts of defendant were necessary antecedents to the consequences in question, they are a cause in fact of those consequences. This has become known as the ‘but for’ or sine qua non rule. Arnold v. Griffith, 192 So. 761, 763 (La.App. 2 Cir. 1989); LaCas v. Hartford Accident & Indemnity Company, 152 So.2d 644 (La.App. 2 Cir. 1963). In determining cause in fact in a negligence case, causation should be considered by the trier of fact without reference to policy overtones that are involved in the case, and if plaintiff can show that he probably would not have suffered the harm complained of but for the defendant’s conduct, he has carried the burden of proof on this question. Malone, Ruminations, supra, pp. 370-73. ...”
Defendant argues that the machine operator, Grisby, was negligent in parking the backhoe and that his negligence, not Mo-Pac’s, was the cause-in-fact of the collision. In this regard, defendant avers that Grisby was fully cognizant of the likelihood that trains would pass through the subject railroad crossing, yet despite this knowledge, he parked the backhoe in such a position as to be afoul of the tracks. In support of its argument, MoPac avers that Grisby testified at trial that at the time he parked the machine, he thought that it was sufficiently clear of the tracks. Further, defendant argues that since Grisby stated at trial that had he had advance warning of the oncoming train, he believed that he would have parked the backhoe in the same position as at the time of the collision, then obviously, MoPac’s failure to warn was not the cause-in-fact of the accident. We reject defendant’s argument.
Initially, we observe that Grisby was reasonable in assuming, based upon past experience, that MoPac’s Section Foreman would provide him with sufficient advance warning of the approach of any train to the crossing so that he could make sure that his tractor was not afoul of the tracks. Acting pursuant to this assumption, Grisby acted both reasonably and prudently when he parked the backhoe since he positioned the tractor as close as humanly possible to the railroad crossing barrier, some three feet from the tracks. Also, we note that Grisby intended only to leave the machine in that position for a few minutes while he went to his truck for medicine. Further, we conclude in light of the facts, that Grisby’s statement at trial regarding his positioning of the machine was obviously an afterthought since at the time, immediately pri- or to the collision, when Grisby first became aware of the imminent arrival of the train at the crossing, he, without hesitation, ran to the tractor and attempted to move it clear of the tracks. Surely, if Grisby was confident that he had parked the backhoe clear of the railroad tracks, he would not have placed himself in a potentially dangerous position by running to the backhoe and attempting to start it and move it to safety. Thus, we conclude that Grisby’s actions immediately prior to the collision more truly reflect his perception of the situation existing immediately prior to the accident than does his testimony at trial over one year after the accident.
Additionally, MoPac contends that Grisby was negligent in failing to shift the backhoe into its starting gear, thus, preventing him from moving the machine to a position of safety. Testimony at trial indicates that the subject backhoe was difficult to shift into its starting gear under the best of conditions. We cannot conclude that Grisby’s failure to immediately engage the machine into its starting gear while he was in a position of imminent peril, constitutes negligence. The courts have recognized *575 previously that one who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence. See Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972). Therefore, we conclude, in light of the record, that Grisby acted reasonably and prudently in parking and subsequently, attempting to move the baekhoe. In summary, we discern no manifest error on the part of the trial court in its factual conclusions that Grisby was not negligent and that the defendant’s negligence was the cause-in-fact of plaintiff’s damages. See Canter v. Koehring Company, 283 So.2d 716 (La.1973).
DAMAGES
MoPac contends that the damages awarded to plaintiff for loss of income due to the inoperativeness of the baekhoe are excessive.
In fixing the award in this case, the trial court relied upon a repair estimate furnished by Red River Equipment of Shreveport, Louisiana, which estimated the cost of repairing the baekhoe to its condition prior to the collision as $6,717.64. The accuracy of this estimate is supported by the testimony of Dale Pendleton, Service Manager of Red River Equipment, and the plaintiff. MoPac does not contest the trial court’s award for the cost of repairing the tractor. However, defendant does question the amount awarded to plaintiff by the trial court for loss of income during the period in which the baekhoe was inoperative.
The record reflects that the plaintiff’s earnings from rental of the machine during the 7V2 month period preceding the collision was $8,226.45 or an average of $1,096.85 per month. We observe that the trial court awarded plaintiff the sum of $2,742.15 for loss of income. Presumably, the trial court concluded that two and V2 months was a reasonable period of time in which to repair the tractor and thus, awarded plaintiff 2 and V2 times his average monthly income derived from rental of the machine. We conclude that the trial court’s award to the plaintiff should be reduced.
There is nothing in the record to support the trial court’s conclusion that two and one-half (2V2 months was a reasonable period of time in which to repair the baekhoe. Quite to the contrary, Dale Pendleton, Service Manager for Red River Equipment, estimated that it would require one hundred (100) hours to repair the machine to its prior condition. Even considering a five (5) hour workday, the repairs could be accomplished within twenty (20) days. In addition, the plaintiff, himself, testified that once he began repairing the tractor, it was put in operable condition within twenty-one (21) days. In this connection, we note that plaintiff testified that he did not begin to repair the damaged machine until October 9, 1979. Rodgers stated that he did not have the time to devote to the backhoe’s repair nor did he have the funds to pay Red River Equipment for such repairs. We do not believe that MoPac should be penalized for plaintiff’s failure to commence repairs within a reasonable time. In Blum v. Allstate Insurance Co., 351 So.2d 283 (La.App.3rd Cir. 1977), writ denied, 353 So.2d 1036 (La.1978), our court stated:
“Where the plaintiff himself is negligent in having the repairs completed promptly, he cannot recover for loss of use beyond the time which should have been reasonably necessary to accomplish the repairs. Desselle v. Wilson, et al., supra [200 So.2d 693 (La.App.3rd Cir. 1967)]; Miller v. Travelers Insurance Company, supra [303 So.2d 924 (La.App.3rd Cir. 1974)]; Carimi v. Saia, 301 So.2d 895 (La.App. 4th Cir. 1974); Broadview Seafoods, Inc. et al. v. Pierre, et al., 173 So.2d 37 (La.App. 4th Cir. 1965), affirmed [248 La. 533] 180 So.2d 694; Alderman v. Henderson, et al., 130 So.2d 157 (La.App.2d Cir. 1961); Voitier v. Farrelly, 320 So.2d 581 (La.App. 4th Cir. 1975); Blashfield Automobile Law & Practice, Vol. 15, page 32.”
*576 In light of the above, we conclude that allowing plaintiff damages for loss of income for one and one-half (IV2 months or $1645.28 is reasonable. We so conclude because the record shows that repairs could have been completed within twenty (20) days and we consider twenty-five (25) days post-accident as a reasonable time in which to secure the necessary parts and commence repairs.
For these reasons, the trial court’s judgment will be amended accordingly.
For the above and foregoing reasons, the judgment of the trial court is amended so as to reduce the award in favor of plaintiff from $9,459.70 to the sum of $8,362.94. In all other respects the judgment of the trial court is affirmed. Costs of this appeal are taxed one-half (V2) to appellee, Roland Rodgers, and one-half (V2) to appellant, Missouri Pacific Railroad Company.
AFFIRMED IN PART; AMENDED IN PART.

. During repair work, the crossing was closed to the traveling public by means of lowered cross-arms which extended across the roadway. Just prior to the collision, Grisby was digging up asphalt in the crossing at the direction of MoPac’s Section Foreman.

. The record reflects no disposition of this matter as to the defendant, W. B. Lindsey. In this connection, we observe that defendant Lindsey filed an exception of no cause of action to the demands of plaintiff, however, the record reflects no ruling on this exception.